77 So.2d 845 (1955)
Sam C. ELLIS and Robert Lee Ellis, as Co-Administrators of the Estate of Fannie Lee Ellis, deceased, Appellants,
v.
Edward Earl BROWN, Appellee.
Supreme Court of Florida. Special Division B.
February 9, 1955.
Rogers, Towers, Bailey & Jones, Taylor Jones, C.D. Towers, Jr., and Earle C. Moss, Jacksonville, for appellants.
John M. McNatt and Marion R. Shepard, Jacksonville, for appellee.
ROBERTS, Justice.
Fannie Lee Ellis was struck by an automobile driven by the defendant, appellee here, Edward Earl Brown, and died a few hours later on the same day. Thereafter, two suits were instituted by her husband, appellant here. One action was filed by him, as husband, under the Wrongful Death Act, §§ 768.01, 768.02, Florida Statutes, F.S.A., to recover the damages alleged to have been personally sustained by him as a result of her death; the other was filed by him, as co-administrator of the estate of Fannie Lee Ellis, under the Survival Statute, Section 45.11, to recover damages for his decedent's loss of earnings for her *846 probable life expectancy or the loss of her probable prospective estate. It is the latter suit which is here on appeal, the lower court having dismissed the complaint for failure to state a cause of action.
It appears that in the appellant's suit, as husband, filed under the Wrongful Death Act, supra (which is not before the court at this time) he had alleged as damage the loss of his wife's future earnings, which item of damages had been disallowed by the trial judge in that case, for the reason that the husband would not have been entitled to the wife's earnings during the life of his wife. The appellant earnestly contends here that, inasmuch as this element of damages could have been recovered by the wife in a suit maintained by her during her life, and cannot be recovered by the husband in a suit under the Wrongful Death Act, it may be recovered by the wife's administrators under the rule of Ake v. Birnbaum, 156 Fla. 735, 25 So.2d 213, 222, that "except as to those torts which section 45.11, supra, provides shall die with the person, full redress for the wrong done the injured person may be obtained by the personal representative * * *." The appellant also relies on the decision of this court in Dobbs v. Griffith, Fla., 70 So.2d 317, in which this court apparently approved an instruction to the jury that in assessing damages of the widow, as administratrix, recoverable under the Survival Statute, they might take account of the probable prospective estate of the husband. This decision should, however, be read in the light of the fact that the parties went to trial, without objection by the defendant, on the theory that loss of prospective estate was a proper element of damages in an action under the Survival Statute, a count under this statute having been combined with one, as widow, under the Wrongful Death Act, and that the only complaint in this court was as to the duplication of damages possible to be awarded under the trial court's instructions.
The appellee also relies on Ake v. Birnbaum, supra, citing as authority for his contention our language in that opinion to the effect that "`loss of services and value in estate'" of a deceased person, "though recoverable by an administrator entitled to sue under the wrongful death statute, is not recoverable by an administrator maintaining a suit under our survival of action statute." The appellee further points out that, in Hooper Construction Co., Inc., v. Drake, Fla., 73 So.2d 279, 281, we said again that "the Administrator claimed damages for the loss of the prospective earnings and savings of the deceased after he reached his maturity, although such damages are recoverable only in a suit by an Administrator under the Wrongful Death Act * * *."
On account of the uncertainty generated by the opinions in the above cited cases, we have again considered the question of the measure of the damages for personal injuries recoverable by the decedent's personal representative under the Survival Statute. Clearly, there can be no recovery by the personal representative under the Survival Statute for "loss of value in estate", meaning the prospective earnings and savings which the decedent would have accumulated and left to his (or her, as the case may be) heirs or legatees upon his death, since the damages would not have been so measured in a suit by him to recover for his personal injuries prosecuted during his lifetime. The comparable item of damages which the injured person would recover in such case is the pecuniary loss which he himself will suffer during his probable life expectancy because of the impairment of his earning capacity, if he is a wage earner, or the inability to attend to his business, or other similar pecuniary loss. He also recovers for the pain and suffering caused by the wrongful act, and for his medical and other actual expenses necessitated by the injury. Ake v. Birnbaum, supra.
The real question here, then, is whether the death of the injured person affects the calculation of damages for the impairment of his earning capacity recoverable by his personal representative. In other words, does the survival of the cause of action carry with it the right to recover the full amount of the damages for impairment of earning capacity which the injured person *847 could have recovered during his lifetime, or does there survive to the personal representative only the right to recover for such damages as were actually sustained by the deceased between the time of his injury and his death?
Our responsibility here is, of course, to discover the intent of the lawmaking body when it enacted the statute. The statute itself provides no clue. It was enacted in 1828 by the Legislative Council of the Territory of Florida as part of a long and comprehensive bill entitled "An Act Regulating Judicial Proceedings," and provided only that "All actions for personal injuries shall die with the person, to-wit: Assault and battery, slander, false imprisonment, and malicious prosecution; all other actions shall and may be maintained in the name of the representatives of the deceased." It remained on our statute books in its original form until 1951  some 123 years  for well over half of which period it was interpreted by this court as being merely declaratory of the common law that actions for personal injuries do not survive the death of the injured person. Jacksonville Street Railway Co. v. Chappell, 1886, Adm'x, 22 Fla. 616, 1 So. 10; Jones, Varnum & Co. v. Townsend, 1887, 23 Fla. 355, 2 So. 612. It was not until 1937 that this court, in State ex rel. H.E. Wolfe Construction Co. v. Parks, 129 Fla. 50, 176 So. 786, squarely overruled these early cases and held that the statute could be applied to save a suit instituted by an injured person during his lifetime, where he died during the pendency of the suit. By this time, of course, our Legislature had enacted the Wrongful Death Act, Cha. 3439, Laws of 1883, now appearing as Sections 768.01, 768.02, supra, creating in the named beneficiaries a new cause of action, "in an entirely new right, for the recovery of damages suffered by them, not the decedent, as a consequence of the wrongful invasion of their legal right by the tort-feasor." Ake v. Birnbaum, supra. It should also be noted that in 1828, when our Survival Statute was passed, the English, Wrongful Death Act (Lord Campbell's Act, 9 & 10 Vict. c. 93 A.D. 1846), which inspired and served as the pattern for our Wrongful Death Act and those of most of the other states, had not yet been enacted.
From what has been said, the difficulty of our problem is immediately apparent, and it would seem that any interpretation by this court at this late date of the intention of a legislature convened some 126 years ago would be pure surmise. The 1951 Act, Ch. 26541, which amended the Survival Statute to harmonize with our holding in State ex rel. H.E. Wolfe Construction Co. v. Parks, supra, is of no help, as the amendatory Act again failed to specify the measure of damages recoverable by the personal representative in a suit under the Statute, as amended. The following rule of interpretation, stated by this court in 1887 in Jones, Varnum & Co. v. Townsend, 23 Fla. 355, 2 So. 612, 613, while considering the very statute with which we are now concerned, has been helpful:
"`To know what the common law was before the making of a statute, whereby it may be seen whether the statute be introductory of a new law, or only affirmative of the common law, is the very lock and key to set open the windows of a statute. Further, as a rule of exposition, statutes are to be construed in reference to the principles of the common law; for it is not to be presumed that the legislature intended to make any innovation upon the common law further than the case absolutely required. The law rather infers that the act did not intend to make any alteration other than what is specified, and besides what has been plainly pronounced; for, if the parliament had that design, it is naturally said they would have expressed it.' Potter's Dwar. St. 185."
The rule of the common law as to the right in which an administrator sues is, as stated by Lord Ellenborough, C.J., in Chamberlain v. Williamson (1814) 2 M. & S. 408, 415.
"Executors and administrators are the representatives of the temporal property, that is, the debts and goods *848 of the deceased, but not of their wrongs, except where those wrongs operate to the temporal injury of their personal estate. But in that case the special damage ought to be stated on the record; otherwise the Court cannot intend it."
And, again, in Bradshaw v. Lancashire and Yorkshire Ry. Co. (1875) 10 C.P. 189, where the administrator sued to recover damages for injuries sustained by the decedent during his lifetime, in a cause of action based on the breach of the defendant carrier's contract to carry safely, the court held that recovery could be had for medical expenses and the loss to the decedent occasioned by his inability to attend to business for the period between his injury and his death. As against the contention that the latter item of damages was too remote, the court said:
"This doctrine might be applied more plausibly if it were sought to recover consequential damages to the estate arising from the death, but what is here sought to be recovered is the immediate injury to the estate caused in the testator's lifetime by his incapacity to attend to business, the direct result of the accident." (Emphasis supplied.)
We think, then, that the "temporal injury" to the decedent's personal estate for which recovery may be had by his administrator meant, at common law, "the immediate injury to the estate caused in the testator's lifetime"; and that under the rule stated above, the Survival Statute should not be interpreted to "make any alteration, other than what [was] specified" in the statute, so that it was not intended to change the common law rule as to the damages recoverable by an executor or administrator in a suit which survived the death of the injured person.
We have also approached the problem as did Pollock, C.B. in Franklin v. S.E.R. Co. (1858) 3 H. & N. at p. 213, where, in considering the damages recoverable under Lord Campbell's Act, supra, he said:
"* * * `the statute does not in terms say on what principle the action it gives is to be maintainable, nor on what principle the damages are to be assessed; and the only way to ascertain what it does, is to show what it does not mean.'"
Since the total impairment of the deceased's earning capacity is an element of damages to be considered in assessing the damages recoverable by certain beneficiaries under the Wrongful Death Act, it is reasonable to assume that the 1883 legislature, at least, must have understood the Survival Statute as not providing for the recovery of this element of damages  otherwise, by enacting the Wrongful Death Act, it would have provided for double damages.
We have also considered the statutes and decisions of the courts of other states and the text writers on this question. The general rule is well expressed by the annotator in 42 A.L.R. at page 188, as follows:
"Where the revival of the pending action is regarded as the exclusive remedy, the great weight of authority holds that in assessing the damages there is to be taken into consideration the fact that the death has entirely destroyed the earning capacity of the deceased, and hence an important element of damages of the compensation for the destruction of the earning capacity of the decedent, based upon his life expectancy. Where, however, the remedy by revival of the pending action is not exclusive, but there also exists a right of action in behalf of certain designated persons to recover compensation for their pecuniary loss, a large element of which is loss of support, it is generally held that the injured person's earning capacity from the time of his death for the period of his life expectancy is to be the basis for assessing compensation for loss of support; hence, in the revived action, compensation for impaired or destroyed earning capacity is limited to *849 the period of time intervening between the injury and the death. This seems to be necessary if double damages are to be avoided."
See also Restatement of Torts, Section 925.
And, finally, aside from the question of the intendment of the legislative body in enacting the Survival Statute, we approve the approach of the Ohio court to the question of the admeasurement, under a survival statute, of damages for impairment of earning capacity. In Allen v. Burdette, 139 Ohio St. 208, 39 N.E.2d 153, 154, the Ohio Supreme Court said:
"The ground upon which evidence of prospective earnings of the deceased was sought to be introduced was that, if an action based upon a claim of permanent injuries had been instituted by the person injured, evidence would have been admissible to show his probable length of life and thereby furnish a basis of computation of the loss resulting from his inability to work and earn money from the time of his injury to the probable time of his death. However, a complete answer to this proffer of evidence is that, while it tends to show the probable length of life and the estimated time of death, it has no place in this case, for the actual time of death is established and it becomes unnecessary to deal in probabilities. Where death has actually occurred, the theory of prospective damages included in such survival claim has no place whatever. Mortality tables are competent because they are regarded as the best evidence of life expectancy; but they have no applicability and their competency therefore disappears when there is no expectancy of life to calculate. Fact had been substituted for prophecy. Death is not a matter of the future; it had already occurred. What had been uncertain and speculative became definite and certain; what had been unknown became known. * * *" (Emphasis supplied.)
Our conclusion, after consideration of all the above-mentioned matters, is that there can be no recovery under the Survival Statute of damages for impairment of earning capacity beyond the death of the injured person. We are cognizant of the anomaly that results from this ruling, in that the wrongdoer will be required to respond in a less amount of damages if the injured person dies, than if the injured persons survives the injury. We must conclude, however, that the problem is essentially a legislative one  and one which, as a matter of fact, arises out of the peculiar provisions of our Wrongful Death Act, rather than the Survival Statute. Thus, contrary to the provisions of Lord Campbell's Act, the prototype of our Wrongful Death Act, under our Act the exclusive right of action inures to the persons named therein, in the order named, and limits the damages recoverable to such "as the party * * * entitled to sue may have sustained by reason of the death of the party killed", Section 768.02, Fla. Stat., F.S.A.; whereas, under Lord Campbell's Act, and those of many other states, the right of action is given to the administrator of the deceased person, who sues for the benefit of all the beneficiaries of the estate of the deceased person. See Florida Cent. & P.R. Co. v. Foxworth, 41 Fla. 1, 25 So. 338. As further evidence of the peculiarity of our Wrongful Death Act, it might be noted that where the deceased person left neither spouse nor child or other person dependent upon him for support, so that the cause of action devolves upon the administrator of his estate, such administrator can recover the full value of the loss of prospective estate of the decedent, reduced to present worth. Florida East Coast R. Co. v. Hayes, 67 Fla. 101, 64 So. 504, 7 A.L.R. 1310; Jacksonville Electric Co. v. Bowden, 54 Fla. 461, 45 So. 755, 15 L.R.A.,N.S., 451. So, again, it might be said that it is cheaper to kill a person who leaves a spouse or child or other person dependent upon him for support, than it is to kill a person who is survived by no one in the designated classes.
But, as noted, the inequalities of the Act should be resolved by legislation and not by *850 judicial pronouncement. The judgment appealed from is, accordingly,
Affirmed.
MATHEWS, C.J., and TERRELL, THOMAS and HOBSON, JJ., concur.