[No. 37114.    Department Two.    November 19, 1964.]

FRANK L. BRINK, *Appellant*, v. ALBERT L. GRIFFITH *et al.*, *Respondents.*\*

*Robert E. Brooke* and *Carl Diana*, for appellant.

*Paul F. Schiffner*, for respondents.

HAMILTON, J.—Plaintiff, by complaint setting forth two separate claims for relief, instituted this action against Albert L. Griffith and his wife seeking damages arising out of the same occurrence. Plaintiff predicated his first claim

\*Reported in 396 P. (2d) 793.

for damages upon the theory of defamation and his second upon the theory of invasion of privacy. Both claims were, following trial, submitted to a jury. It returned a verdict favorable to plaintiff, segregating the award by allowing the sum of $10,000 upon the defamation claim and $5,000 upon the invasion of privacy claim. During trial, the trial court dismissed defendant wife and the marital community from the action, and, following trial, granted defendant Albert L. Griffith's motion for judgment notwithstanding the verdict upon the invasion of privacy claim. Judgment was accordingly entered against Mr. Griffith individually in the sum of $10,000. Plaintiff appeals.

Background-wise, the action arose out of the following circumstances. In April, 1961, the defendant Albert L. Griffith was mayor of the Town of Medical Lake, Washington. On the first day of that month, Mayor Griffith, by virtue of the authority vested in him, hired plaintiff as a municipal police officer. Shortly thereafter differences over law-enforcement policy arose, and in July, 1961, Mayor Griffith summarily discharged plaintiff.

Several citizens of the community, feeling that plaintiff had provided efficient service, circulated a petition calling for plaintiff's reinstatement. The petition was addressed to the mayor and city council, and was signed by 198 persons.

Subsequent to circulating the petition, and prior to the next council meeting, those behind the reinstatement movement approached one Frank Shaw requesting that he act as spokesman at the forthcoming council meeting. Mr. Shaw, himself a signer of the petition, agreed.

The meeting was held in the town hall on August 16, 1961. The hall was filled to capacity, with attendance estimated at upwards of 75 or more persons. Seated at a table near the front of the hall were the members of the council, the city attorney, the clerk, and Mayor Griffith, who presided.

Shortly after commencement of the meeting, the mayor recognized Mr. Shaw who gave a short talk in support of the petition and presented it to the mayor. The mayor

acknowledged the petition and, following a statement by the city attorney concerning the mayor's authority to hire and fire, gave some indication that he was possessed of information bearing upon the issue. He requested that Mr. Shaw come forward and be advised.

Complying with the mayor's request, Mr. Shaw approached the table and the mayor directed his attention to certain documents resting upon the table. The documents consisted of plaintiff's picture, a front and profile view photograph with an identification number across the chest, which appeared to be a "mug shot," and a yellow legal-sized sheet of paper upon which was a list of what appeared to be past criminal charges or convictions under the title "FBI RECORD, #263,567B."

Mr. Shaw, being quite shocked by the disclosure, inquired whether the list represented criminal convictions, to which the mayor replied in the affirmative. This colloquy was out of the hearing of the audience and most of the council members. At this point, Mr. Shaw requested a 10 minute recess. The request was denied and the meeting was forthwith adjourned with an announcement by the mayor to the effect that the information precluded his considering plaintiff's reinstatement. The minutes of the meeting, signed by the mayor and town clerk, reported the incident as follows:

"There were about 75 Towns people present necessitating having the first half Of the meeting upstairs.

"A petition with 198 signers was presented to the Council by Frank Shaw, asking to have Frank Brink re-instated as Police Officer, Who had been previously discharged by the Mayor. Atty. Walker read the law in regard to the hiring and firing of Town Employee's, which states that the Mayor may hire and fire any employee and not be required to give reason, however it developed that the Mayor had good and sufficient reason for the action he had taken in the Brink case.

"When certain facts had been brought to light, the citizens present were satisfied the Mayor's actions were justified.

"The Mayor declared this part of the meeting closed, and the Council returned to the regular council chamber and proceeded with the business of the evening."

The evidence is in conflict as to whether the mayor had shown the documents to any other persons before or after the meeting, and is likewise somewhat in dispute as to the extent rumors arising therefrom circulated around the community.

The implication that the documents constituted evidence of criminal convictions was false. What appeared to be the "mug shot" was in reality a part of an application for a taxicab driver's license filed by plaintiff in Spokane, and the purported list of convictions represented plaintiff's juvenile background and a complaint filed with the Spokane County Sheriff's Office which had later been dismissed as a mistake. The extent of the mayor's knowledge of the true nature of the documents and their import is in dispute.

By his first assignment of error, plaintiff contends the trial court erred in dismissing and discharging from liability the marital community composed of Mr. and Mrs. Albert L. Griffith. With due deference to respective counsel and the trial court, we note that while this case was pending on appeal this court issued its decision in *Kilcup v. McManus,* 64 Wn. (2d) 771, 394 P. (2d) 375 (1964). In *Kilcup* we overruled our previous decisions holding marital communities of public officials immune from liability for torts committed by a public official within the scope of official duties. We stated (p. 796):

"A married person, carrying on his trade, calling or occupation for either a public body or a private employer, serves both his employer, public or private, and his community, and we see no reason for the law to exempt his community if the employer be the public but hold his community liable if his employer be private. In either case, his community shares exactly the same benefits from his office or employment. The community should be and is liable for wrong inflicted by the husband in the execution of his public office or employment occurring through his ignorance, carelessness or mistaken ideas of his official powers and duties. McKay, Community Property (2d ed.) § 823; *Shaw v. Greer,* 67 Ariz. 223, 194 P. (2d) 430.

"This brings us to the final problem under discussion— the liability, if any, of the defendants McManuses' community on general grounds, as distinguished from the hus-

band's status as a public official. A community is liable for the tort of either spouse if the tort is calculated to be, is done for, or results in a benefit to the community or is committed in the prosecution of the community business. *LaFramboise v. Schmidt*, 42 Wn. (2d) 198, 254 P. (2d) 485. McManus acted under the color and authority of his public office, as a port commissioner and also as one holding a deputy sheriff's commission. As a port commissioner, he occupied a position of honor and public esteem, bringing these benefits to his community, and also received a salary which constituted income to his community. In carrying out the functions of a port commissioner, he was carrying out and engaged in the prosecution of the community business as fully as though he garnered the honors, emoluments and salary of any other occupation, business or calling. That he attempted to carry out his functions and exercised his powers . . . negligently, or in excess of his authority, or maliciously, does not relieve his community of liability as long as he was acting under the color or purported authority of his office."

We deem the *Kilcup* case controlling of the instant case. Accordingly, we are constrained to hold that the trial court erred in dismissing and discharging the Griffith's marital community.

By his second assignment of error, plaintiff contends the trial court erred in granting judgment notwithstanding the verdict as to that segment of the jury award attributed to the claim for invasion of privacy.

Counsel in their briefs and argument bearing upon this assignment propound two questions: (1) Is the right of privacy, as a basis for a tort action, recognized in this state? (2) If the right is so recognized, can plaintiff, under the circumstances of the instant case, recover damages for both defamation and invasion of privacy?

Other than to acknowledge that invasion of privacy is recognized as actionable in varying degrees in at least 34 jurisdictions,[1] and to note in passing that we have not ex-

---

[1] Alabama, Alaska, Arizona, California, Connecticut, Delaware, District of Columbia, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Michigan, Mississippi, Missouri, Montana, Nevada, New Jersey, North Carolina, Ohio, Oregon, Oklahoma,

pressly rejected such an invasion as a basis for a tort claim,[2] we do not deem a specific or definitive answer to the first question essential to a disposition of this assignment of error. In the light of the pleadings, the instructions, and the verdict, the dispositive question here is the second one, which we hold must be answered in the negative.

■ Theoretically, the difference between the torts of defamation and invasion of privacy is that a defamation action is primarily concerned with compensating the injured party for damage to reputation, while an invasion of privacy action is primarily concerned with compensation for injured feelings or mental suffering. *Themo v. New England Newspaper Pub. Co.*, 306 Mass. 54, 27 N. E. (2d) 753 (1940); Defamation and the Right of Privacy, 15 Vand. L. Rev. 1093 (1962). A problem arises, however, from the fact that for either defamation or invasion of privacy the damages recoverable are not limited to the theoretical bases of the respective torts. In defamation actions, the injured party is allowed to recover for emotional distress[3] as well as injury to reputation, and vice versa in some actions for invasion of privacy. 15 Vand. L. Rev. 1112.

■ In the instant case, the wrong complained of involves but one transaction, the import of which was to cast the plaintiff in a false light;[4] the complaint alleges two claims for relief based thereon and indiscriminately prays for general damages upon each claim; the instructions to

New York, Pennsylvania, South Carolina, South Dakota, Tennessee, Utah, Virginia, and West Virginia.

[2]See *Hillman v. Star Pub. Co.*, 64 Wash. 691, 117 Pac. 594 (1911); *Hodgeman v. Olsen*, 86 Wash. 615, 150 Pac. 1122 (1915); *State ex rel. LaFollette v. Hinkle*, 131 Wash. 86, 229 Pac. 317 (1924); *Lewis v. Physicians & Dentists Credit Bureau, Inc.*, 27 Wn. (2d) 267, 177 P. (2d) 896 (1947); *Almy v. Kvamme*, 63 Wn. (2d) 326, 387 P. (2d) 372 (1963).

[3]The following Washington cases indicate that recovery may be had for emotional distress in defamation actions. *Farrar v. Tribune Pub. Co.*, 57 Wn. (2d) 549, 358 P. (2d) 792 (1961); *Viss v. Calligan*, 91 Wash. 673, 158 Pac. 1012 (1916); *Woodhouse v. Powles*, 43 Wash. 617, 86 Pac. 1063 (1906); *Ott v. Press Pub. Co.*, 40 Wash. 308, 82 Pac. 403 (1905).

[4]See Dean William L. Prosser's article, Privacy, 48 Cal. L. Rev. 348 (1960), wherein he describes the four kinds of invasion making up the law of privacy.

the jury indiscriminately permit recovery of damages for wounded feelings and injury to reputation; and the verdict awards damages upon each claim for relief. The conclusion appears inescapable that a duplication of damages has occurred.

The problem thus presented is characterized and the solution suggested by Dean John W. Wade, in his article Defamation and the Right of Privacy, *supra,* as follows (p. 1123):

" . . . Since the very first privacy case, it has often been held that an action can be maintained successfully for both defamation and invasion of the right of privacy, usually by separate counts in one civil action. The cases do not indicate how much attention is given to the prevention of duplication of damages. If the action in defamation can be maintained, plaintiff is entitled to damages for mental distress; and, if the privacy action can be maintained for being publicly placed in a false position, it could appear that plaintiff can recover damages for the harm to his reputation from the position in which he is so placed. A better position is taken by the New York cases which indicate that there is only a single action for the one transaction with complete damages being given for it."

In short, while the plaintiff in the instant case was entitled to allege the respective theories of recovery alternatively or in separate claims, he was not entitled to recover twice for the same elements of damage growing out of the same occurrence or event.

We conclude that the trial court did not err in granting defendants' motion for judgment notwithstanding the verdict directed to the award for invasion of privacy. Neither party has appealed from the trial court's action upon the post-trial motion with respect to the award predicated upon defamation.

The cause is remanded with directions to enter judgment against the marital community composed of Mr. and Mrs. Albert L. Griffith. Otherwise, the judgment of the trial court is affirmed. Each party shall bear his own costs on appeal.

OTT, C. J., DONWORTH, FINLEY, and WEAVER, JJ., concur.