[No. 42478.     En Banc.     March 15, 1973.]

JACK CRISCUOLA, *as Administrator, Respondent,* v. HOWARD ANDREWS *et al., Appellants.*

*Lester T. Parker,* for appellants.

*Mullavey, Hageman, Prout & Kirkland,* by *Richard L. Prout,* for respondent.

*Joseph J. Lanza, Dwayne A. Richards,* and *Elizabeth J. Bracelin,* amici curiae.

UTTER, J.—An action pursuant to the survival statute was brought against Howard Andrews and his wife in the name of the estate of John L. Criscuola. A judgment on a jury verdict for $32,000 was entered. The sole issue presented is whether a cause of action survives under our general survival statute when death is instantaneous. We hold that it does and affirm the verdict.

At the time of his death, John Criscuola was 21 years old and single. He died at the scene of the accident, left no surviving wife or children and had no parents, sisters or brothers dependent on him for support. Although there could be a question raised as to whether his death was instantaneous, we assume for purposes of this decision that it was.

Our decision in *Hinzman v. Palmanteer,* 81 Wn.2d 327, 501 P.2d 1228 (1972) reaffirmed the court's earlier holding in *Warner v. McCaughan,* 77 Wn.2d 178, 460 P.2d 272 (1969) that under the general survival statute, all tort causes of action, except claims for pain and suffering, survive the death of the injured party. In those cases we emphasized the distinction between the causes of action under the general survival statute which continue after death as an asset of the estate and those actions under the wrongful death statute which are new causes of action for the benefit of certain named parties and are premised on an alleged wrong to the statutory beneficiaries, not the estate.

In many jurisdictions that have held no cause of action survives under the survival acts when death is instantaneous, this conclusion has been reached in an effort to avoid double recovery where actions are brought under both wrongful death and survival statutes. Recovery under their survival statutes is limited to losses incurred before death and compensation to the named statutory beneficiaries under a wrongful death action is allowed for injuries incurred by them as a result of the death. *Ellis v. Brown,*

77 So. 2d 845 (Fla. 1955); *Allen v. Burdette,* 139 Ohio St. 208, 39 N.E.2d 153 (1942); *Hindmarsh v. Sulpho Saline Bath Co.,* 108 Neb. 168, 187 N.W. 806 (1922). Although this is one means of providing for allocation of damages and thereby preventing double recovery, it is not the only method of doing so and seems to us an inappropriate procedure.

■ Although there is no problem of double recovery presented by the facts in this case, we believe it should be commented on for the guidance of our courts in the future. The problem of prospective double compensation where actions are brought under both survival and wrongful death actions is avoided if recovery under the survival action is limited to the prospective net accumulations of the deceased. Payment for support theoretically going to the statutory beneficiaries under the wrongful death action is then included in the decedent's expenses and the problem of a prospective double recovery is obviated. This is a better way to face the issue rather than to arbitrarily indicate damages under a survival action cease at death.

We believe this conclusion is justified because it allows for concurrent remedies without duplicating damages, by not implying from the existence of a wrongful death act that all prospective losses were to be cut off in a survival action. Moreover, it is consistent with the rule that "all" personal injury causes of action survive, including the loss of prospective earnings, and that the loss of earnings may be prospective when death is caused by the injury. Finally, the injury to creditors and heirs or devisees in the loss of expected future earnings does not abate at decedent's death because their injury is included in decedent's cause of action which arose, even if only momentarily, before death. Martin, *Measuring Damages in Survival Actions for Tortious Death,* 47 Wash. L. Rev. 609, 624-25 (1972).

Our current holdings do not require a contrary approach. We addressed ourselves in *Hinzman* to the question of what rule should be chosen to measure prospective lost wages in a survival action. In that case, we indicated under those

circumstances we would choose a rule which measured the probable worth of the decedent's future net earnings had she lived to her normal life expectancy. Personal expenses were deducted from gross earnings to reach the net amount. *Hinzman* involved a 7-year-old girl and the multiple problems—whether she would or would not marry, and at what age, and when to start deductions for family expenditures—were deemed too uncertain to allow any other test to be used. Whether we would apply a different rule to an adult who had fixed living expenses already established we do not decide at this time. *See* 47 Wash. L. Rev. 609, 622 (1972).

We hold that when there is an instantaneous death, a cause of action still exists under the Washington survival statute.

Judgment affirmed.

FINLEY, ROSELLINI, HUNTER, HAMILTON, STAFFORD, and WRIGHT, JJ., concur.

HALE, C.J. (dissenting)—The court compounds an error which I think it made in *Hinzman v. Palmanteer*, 81 Wn.2d 327, 501 P.2d 1228 (1972). It treats the statute not as one to preserve or provide survival for existing causes of action but as one creating new causes of action among classes of persons whom, I think, the legislature never intended to benefit, *i.e.*, creditors, distant relatives, nondependents and, quite possibly, under the court's construction, with parties simply under contract with or to the deceased. As the court makes clear, John Criscuola was 21 years old at the time of his death; he was unmarried and had no children; he had no parents, no brothers or sisters, dependent upon him for support. For whose benefit then does the action survive? Did the legislature intend, in enacting RCW 4.20.046, to give a cause of action to his distant relatives, his creditors —and perhaps those with whom he had contracted to perform services or make purchases—for the loss of their profits or his particular talents?

RCW 4.20.046 *reads:*

(1) All causes of action by a person or persons against another person or persons shall survive to the personal representatives of the former and against the personal representatives of the latter, whether such actions arise on contract or otherwise, and whether or not such actions would have survived at the common law or prior to the date of enactment of this section: *Provided, however,* That no personal representative shall be entitled to recover damages for pain and suffering, anxiety, emotional distress, or humiliation personal to and suffered by a deceased. The liability of property of a husband and wife held by them as community property to execution in satisfaction of a claim enforceable against such property so held shall not be affected by the death of either or both spouses; and a cause of action shall remain an asset as though both claiming spouses continued to live despite the death of either or both claiming spouses.

(2) Where death or an injury to person or property, resulting from a wrongful act, neglect or default, occurs simultaneously with or after the death of a person who would have been liable therefor if his death had not occurred simultaneously with such death or injury or had not intervened between the wrongful act, neglect or default and the resulting death or injury, an action to recover damages for such death or injury may be maintained against the personal representative of such person.

The legislature, in enacting RCW 4.20.046, assuredly did not intend to create causes of action in the decedent's estate where there had been no cause of action before death. That statute must be construed in pari materia with RCW 4.20.010 which provides that, where the death of another is caused by a wrongful act, the personal representative of the decedent may maintain an action against the tort-feasor. But it was unequivocally declared in the statutes, however, that *every* such action shall be for the benefit of certain named classes of beneficiaries: family members or dependent relatives of certain classes. No other class of beneficiary is specified. RCW 4.20.020.

Whatever the legislature intended by its enactment in RCW 4.20.046, it did not intend as the court now does to enlarge this restrictive and specific section by means of a

broad and general pronouncement to allow the estate per se to recover for losses it never suffered.

Statutes on the same subject are to be construed together so as to avoid a conflict. *Silvernail v. County of Pierce*, 80 Wn.2d 173, 492 P.2d 1024 (1972). Generally speaking, where there is a conflict, the specific statute controls the general. *Mercer Island v. Walker*, 76 Wn.2d 607, 458 P.2d 274 (1969). Here, reading the two statutes in pari materia, the specific language of the earlier would limit the general terms of the later to resolve a potential conflict. If that conflict is in fact seen after the limiting construction, then the specific section should be seen to control over the general.

Limiting the survival of actions, as I believe the statutory scheme directs, will prevent what I see as a very real threat inherent in the majority opinion. Distant relatives, creditors and nondependents have never been held to have an economic interest in one's survival, nor has the state under its escheat powers. The court now gives all of them a pecuniary interest in the lifetime earnings of one killed in an accident. It creates a windfall in one's death to a class which in justice has heretofore never been permitted any interest whatever.

Many of the same flaws are here apparent as were apparent in this court's recent decision in *Hinzman v. Palmanteer, supra*. A great potential for double recovery and the uncertainty of measuring lifelong earnings and expenses of living are apparent in this case, maintained by the estate per se ostensibly for losses suffered by the estate per se.

In my opinion, the legislature never intended to create causes of action for the benefit of legal strangers to the deceased, nor give his creditors a stake in his predicated fictitious net worth, nor give the state a survivor's claim in escheat, nor allow distant relatives a tort claim for his demise. Accordingly, I dissent to the majority's interpretation of what I perceive to be a clear and well-limited statutory scheme.