[No. 46010.   En Banc.   January 17, 1980.]

PATRICIA L. KLOSSNER, *Individually and as Executrix,*
ET AL, *Respondents,* v. SAN JUAN COUNTY,
*Petitioner.*

*Owen A. Johnson* and *Robert Butler,* for petitioner.

*Aiken, St. Louis & Siljeg* and *Douglas W. McQuaid,* for respondents.

WILLIAMS, J.—Petitioner San Juan County appeals from a decision of the Court of Appeals which reversed the trial court's order granting summary judgment and dismissing respondent Patricia Klossner's action brought under the wrongful death and survival statutes, RCW 4.20.020 and RCW 4.20.060. *Klossner v. San Juan County,* 21 Wn. App. 689, 586 P.2d 899 (1978). We affirm the Court of Appeals.

Respondent's husband, Dean L. Klossner, died as a result of injuries sustained when his truck left the road in San Juan County. Respondent thereafter instituted an action against petitioner individually and in her capacity as both personal representative of the estate of her deceased husband and guardian ad litem for decedent's minor children and his unadopted stepchildren. In her complaint respondent alleged negligence in the design, construction, and maintenance of the road, its shoulder, and the adjoining ditch. She further alleged petitioner failed to post adequate warning signs when it knew or should have known that the shoulder was incapable of supporting the weight of a truck.

Both parties engaged in pretrial discovery by way of interrogatories. Thereafter, petitioner moved for summary judgment and in support of the motion attached its interrogatories to respondent along with her answers. Respondent, in opposition to the motion, filed her interrogatories to the petitioner along with its answers. No other documents were filed in support of or in opposition to the motion.

Neither respondent's complaint nor her answers to petitioner's interrogatories were based on her personal knowledge. Similarly, petitioner's answers to respondent's interrogatories were not based on personal knowledge. Nor did either set of documents show that the affiant was competent to testify to the matters stated therein. On the basis of that record, petitioner contended in its motion that there

was no genuine issue as to any material fact regarding liability and that respondent's action was improperly brought on behalf of the decedent's stepchildren, since they were not entitled to recover under this state's wrongful death and survival statutes. The motion for summary judgment was granted.

On appeal, the Court of Appeals reversed the trial court. In the majority opinion, the court held that reasonable inferences could be drawn from respondent's answers to the interrogatories which would raise an issue of material fact regarding negligence. *Klossner v. San Juan County, supra* at 693-94. In an opinion concurring in the result, two judges added that petitioner failed to meet its burden of showing there was no material issue of fact, because allegations contained in the documents filed in support of the motion were based on hearsay and thus inadmissible under CR 56(e).[1] *Klossner v. San Juan County, supra* at 695-96 (Andersen, A.C.J., concurring in the result). All three judges agreed that the wrongful death and survival statutes did not allow recovery by the decedent's unadopted stepchildren, and the court affirmed that portion of the summary judgment order which dismissed the claims of the stepchildren. We granted San Juan County's petition for review. *Klossner v. San Juan County,* 91 Wn.2d 1022 (1979).

██ Affidavits submitted in support of a motion for summary judgment must be made on personal knowledge, set forth admissible evidentiary facts, and affirmatively show that the affiant is competent to testify as to his or her averments. CR 56(e); *Meadows v. Grant's Auto Brokers,*

---

[1]CR 56(e), in effect at the time petitioner's motion for a summary judgment was granted, provided as follows:

"**(e) Form of Affidavits; Further Testimony.** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits."

*Inc.,* 71 Wn.2d 874, 431 P.2d 216 (1967). Answers to interrogatories may be considered in ruling on a motion for summary judgment, as long as such answers satisfy the other requirements of CR 56 and contain admissible material. *American Linen Supply Co. v. Nursing Home Bldg. Corp.,* 15 Wn. App. 757, 551 P.2d 1038 (1976). Affidavits or answers to interrogatories verified on belief only and not on personal knowledge do not comply with CR 56(e) and therefore fail to raise an issue as contemplated by the rule. *Stringfellow v. Stringfellow,* 53 Wn.2d 639, 335 P.2d 825 (1959).

Petitioner contends it presented uncontroverted evidence that there was no eyewitness to the accident. It then argues that having done so it is incumbent upon the respondent to present evidence raising a material issue of fact on the question of petitioner's negligence. Since respondent's answers to interrogatories were not based on personal knowledge, petitioner concludes that they were therefore inadmissible for that purpose.

Presumably, the evidence on whether there was an eyewitness to the accident was contained in either of the parties' answers to the interrogatories or the pleadings, for they were the only evidentiary documents considered by the trial court in ruling on the motion for summary judgment. Those are the same documents which petitioner on the one hand relies on to establish the nonexistence of an eyewitness to the accident, but on the other contends respondent cannot use to establish facts creating an issue, because they are not based on personal knowledge. Obviously, petitioner may not have it both ways. Indeed, it may not have it either way, for none of the documents satisfies CR 56(e). They were not made on personal knowledge nor did they affirmatively show that the affiant was competent to testify to the matters stated therein. Thus, they were inadmissible in evidence. It follows that petitioner failed to meet its burden of proving there was no material issue of fact. *See Morris v. McNicol,* 83 Wn.2d 491, 519 P.2d 7 (1974). Accordingly, as the Court of Appeals held, the trial

court erred in granting petitioner's motion for summary judgment.

Respondent brought this action on behalf of decedent's children from a prior marriage, the children born to her and the decedent, and her own children who had not been adopted by decedent. The trial court dismissed all claims brought on behalf of the decedent's unadopted stepchildren on the ground that they were not beneficiaries under the wrongful death and survival statutes.[2]

Respondent contends that the purpose of the statutes is to provide a remedy for the family of the deceased commensurate with the loss sustained through his death. *Hedrick v. Ilwaco Ry. & Nav. Co.,* 4 Wash. 400, 403, 30 P. 714 (1892). Moreover, she claims this purpose has been furthered by a recent trend in the law extending to stepchildren those rights accorded natural and adopted children. She concludes, therefore, that the wrongful death and survival statutes, being remedial in nature, should be liberally construed to include stepchildren as beneficiaries.

█ Respondent is correct in declaring that there is a trend in the law enhancing the rights of stepchildren. It is

---

[2] "Every such action shall be for the benefit of the wife, husband, child or children of the person whose death shall have been so caused. If there be no wife or husband or child or children, such action may be maintained for the benefit of the parents, sisters or brothers, who may be dependent upon the deceased person for support, and who are resident within the United States at the time of his death.

"In every such action the jury may give such damages as, under all circumstances of the case, may to them seem just." RCW 4.20.020.

"No action for a personal injury to any person occasioning death shall abate, nor shall such right of action determine, by reason of such death, if such person has a surviving spouse or child living, or leaving no surviving spouse or issue, if there is dependent upon the deceased for support and resident within the United States at the time of decedent's death, parents, sisters or brothers; but such action may be prosecuted, or commenced and prosecuted, by the executor or administrator of the deceased, in favor of such surviving spouse, or in favor of the surviving spouse and children, or if no surviving spouse, in favor of such child or children, or if no surviving spouse or child or children, then in favor of the decedent's parents, sisters or brothers who may be dependent upon such person for support, and resident in the United States at the time of decedent's death." RCW 4.20.060.

noteworthy, however, that the extension of rights to step-children in Washington has been accomplished heretofore by the legislature, not by this court, and that the legislature has imposed careful limits on those rights. Thus, for example, the legislature has extended inheritance rights to stepchildren only under narrow circumstances: When the property would otherwise escheat to the state. RCW 11.04-.095. Moreover, the legislature has specifically limited a stepchild's right of support from a stepparent to the period of the marriage between the child's natural parent and the stepparent. RCW 26.16.205. Finally, the industrial insurance laws, while providing some benefits to stepchildren and stepparents, also set dependency and other limits on those benefits. RCW 51.08.030, .050; RCW 51.32.020, .025.

The wrongful death and survival statutes, unlike those statutory provisions cited by respondent, contain no mention of stepchildren. RCW 4.20.020, .060. The beneficiaries of a wrongful death action are, among others, a "child or children". RCW 4.20.020. It is a general rule of construction that words in a statute, unless otherwise defined, must be given their usual and ordinary meaning. *Dominick v. Christensen,* 87 Wn.2d 25, 27, 548 P.2d 541 (1976). While the legislature has defined "child" in some statutes to include stepchildren (*see, e.g.,* RCW 51.08.030), there is no such extension of the definition of the term in RCW 4.20.020.

Moreover, this court's several decisions that the wrongful death statute is to be liberally construed do not mean we may read into the statute matters which are not there. *King County v. Seattle,* 70 Wn.2d 988, 991, 425 P.2d 887 (1967). Respondent cites *Armijo v. Wesselius,* 73 Wn.2d 716, 440 P.2d 471 (1968), as an example of liberal construction of the statute. In that case we interpreted the word "child" to include an illegitimate child of the decedent.[3] Such a result

---

[3]*Webster's Third New International Dictionary* (1971) includes "male or female descendant" and "adopted child" in its definition of "child", but nowhere includes the term "stepchild."

does no violence to the plain meaning of the statutory language. By definition, an illegitimate child *is* a child of its parent, which is all the statute requires.[4]

It is evident, therefore, that recent extensions of stepchildren's rights in Washington have been made in all cases by the legislature and that the legislature has carefully limited the rights it has extended. To include stepchildren in the class to be protected by the wrongful death statute would require us to read into the statute something clearly not intended by the legislature. This we may not do. Accordingly, the Court of Appeals is affirmed.

ROSELLINI and HICKS, JJ., and HUNTER and KIRKWOOD, JJ. Pro Tem., concur.

DOLLIVER, J. (dissenting)—The question here is whether the word "child" or "children" includes unadopted stepchildren. Most jurisdictions which hold that unadopted stepchildren cannot bring an action for wrongful death rely on a strict construction of wrongful death and survival statutes because they are in derogation of the common law. *See* Annot., *Action for Death of Stepparent by or for Benefit of Stepchild,* 68 A.L.R.3d 1220 (1976); *Steed v. Imperial Airlines,* 12 Cal. 3d 115, 524 P.2d 801, 115 Cal. Rptr. 329 (1974); *Marshall v. Macon Sash, Door & Lumber Co.,* 103 Ga. 725, 30 S.E. 571 (1898); *Flores v. King,* 13 Md. App. 270, 282 A.2d 521 (1971). Until this case, we had

---

[4]Respondent cites two other cases in support of the proposition that there is a trend extending equal rights to stepchildren. Again, the rights of stepchildren in those cases had been *legislatively* established by the explicit inclusion of the word "stepchild" in the statutory language. *In re Estate of Bordeaux,* 37 Wn.2d 561, 225 P.2d 433, 26 A.L.R.2d 249 (1950); *State v. Gillaspie,* 8 Wn. App. 560, 507 P.2d 1223 (1973). In *Bordeaux,* petitioners claimed to be stepchildren of decedents for inheritance tax purposes, and the court's task was to determine whether they were in fact stepchildren within the meaning of the tax statute. Laws of 1943, ch. 277, § 1, p. 870 (now RCW 83.08.020). In *Gillaspie,* the issue was whether a stepparent, separated but not divorced from his stepchild's mother, had a duty to support the child before the divorce was final. RCW 26.20.030(1)(b). The court was not called on in either of the cases to decide *whether* stepchildren were to be afforded certain rights, which is the issue in the present case.

taken a different approach and held that this state's wrongful death statute, because it is remedial in nature, is to be liberally construed to accomplish the purposes behind its enactment. *Cook v. Rafferty,* 200 Wash. 234, 93 P.2d 376 (1939); *Johnson v. Ottomeier,* 45 Wn.2d 419, 275 P.2d 723 (1954); *Gray v. Goodson,* 61 Wn.2d 319, 378 P.2d 413 (1963); *Armijo v. Wesselius,* 73 Wn.2d 716, 440 P.2d 471 (1968).

What is the purpose of wrongful death statutes? It is to provide a remedy whereby the family or relatives of the deceased, those who might naturally have expected mainte-nance or assistance from him had he lived, may recover compensation from the wrongdoer commensurate with the loss sustained. *Hedrick v. Ilwaco Ry. & Nav. Co.,* 4 Wash. 400, 30 P. 714 (1892); Note, 44 Wash. L. Rev. 523 (1969). In this case, decedent's stepchildren might naturally have expected maintenance or assistance from him had he lived because RCW 26.16.205 requires stepparents to support their stepchildren. This legal obligation imposed upon the stepparent creates a reciprocal right of stepchildren to maintain a wrongful death action to recover compensation from the wrongdoer commensurate with the loss sustained.

In *Armijo v. Wesselius, supra,* we interpreted the word "child" in the wrongful death statutes to include unadopted illegitimate children of the decedent. The majority dis-misses *Armijo* with the observation that "an illegitimate child *is* a child of its parent". But this is exactly the point. The court in *Armijo* rejected the kind of narrow construc-tion of the law urged by the majority here and by the dis-sent in *Armijo.* While the narrow view might well have fitted the outlook and mores of Victoria's England, it hardly comports with either the realities of or the appro-priate value systems of today.

In *Armijo* we said, "Society is becoming progressively more aware that children deserve proper care, comfort, and protection even if they are illegitimate." *Armijo,* at 721. The modern view is to look to the welfare of children and to protect them from consequences over which they have no

control. Just as they do not ask for the status of illegitimacy, neither do they become stepchildren through their own devices. While in 1846 when Lord Campbell's Act, the original wrongful death statute, was framed, a divorce was a scandal and stepchildren were a rarity, today the former is accepted and the latter are commonplace.

The trend in the law is toward according stepchildren rights equal to those of natural children. In *In re Estate of Bordeaux*, 37 Wn.2d 561, 594, 225 P.2d 433, 26 A.L.R.2d 249 (1950), we said that the modern tendency has been, and rightly so, to assimilate the stepchild to the natural child. *See also In re Estate of Ehler*, 53 Wn.2d 679, 335 P.2d 823 (1959); *State v. Gillaspie*, 8 Wn. App. 560, 507 P.2d 1223 (1973). Our descent and distribution statutes allow inheritance from a stepparent in order to avoid escheat of property. RCW 11.04.095. The industrial insurance laws afford benefit rights to stepchildren and stepparents. RCW 51.08-.030, .050. Regulations of the Department of Social and Health Services treat children who live with a stepparent the same as children who live with both natural parents for purposes of distribution of Aid to Families with Dependent Children. *See* WAC 388-24-135. The legislature's policy most clearly expressed in RCW 26.16.205, but also contained in other statutes and administrative regulations, is to expand the rights of stepchildren. Given this policy, as well as the broad remedial purposes of RCW 4.20.020 and 4.20.060, the same liberal interpretation placed in the statutes in 1968 which allowed illegitimate children the benefits of a wrongful death action should be made in this case to extend the same benefits to stepchildren.

I dissent.

WRIGHT, BRACHTENBACH, and HOROWITZ, JJ., concur.