[No. 7149-9-III.   Division Three.   March 24, 1987.]

GILBERT STRICKLAND, ET AL, *Appellants,* v. DEACONESS HOSPITAL, ET AL, *Respondents.*

*Leonard W. Schroeter* and *Schroeter, Goldmark & Bender,* for appellants.

*Dan W. Keefe, Keefe & King, William D. Symmes, Leslie R. Weatherhead,* and *Witherspoon, Kelley, Davenport & Toole,* for respondents.

THOMPSON, J.—The personal representatives for Gilbert Strickland and Robert Weaver,[1] and the Weavers[2] appeal the summary judgment dismissal of their claims of outrage, and constitutional and common law violations of privacy.

---

[1]Both Mr. Strickland and Robert Weaver died during the pendency of the action and their personal representatives were duly substituted.

[2]The community of James and Dawn Weaver, and Robert's wife, Gaylene Weaver. Robert and James were brothers.

We affirm.

On October 21, 1981, Gilbert Strickland suffered cardiopulmonary failure and was admitted to Deaconess Hospital where he was placed on a respirator in intensive care. Mr. Strickland's treating physician, Dr. Donald D. Storey, began to "wean" Mr. Strickland from his respirator within a day or two. On October 26, without obtaining Mr. Strickland's consent, Dr. Storey entered a "no code" order on the medical chart, which meant if the patient experienced cardiac or respiratory arrest, no resuscitation measures would be implemented. Dr. Storey testified he obtained the consent of Mr. Strickland's mother in Georgia prior to entering the order on the chart, but she disputes that fact.

On October 27, 1981, James and Robert Weaver came to visit Mr. Strickland at the hospital. The Weavers were the sons of Joan Weaver, whose marriage to Mr. Strickland was invalidated upon discovery that she was still bound by a previous marriage. Neither James nor Robert was adopted by Mr. Strickland, and it had been many years since they had been members of the Strickland household. Observing Mr. Strickland's distress after removal of the respirator, the Weavers demanded he be reconnected. This occurred, and Dr. Storey withdrew the "no code" order.

Mr. Strickland recovered and checked himself out of the hospital November 8, 1981. In February 1983, Mr. Strickland and the Weavers brought an action against the hospital, Dr. Storey, and Associated Internists, P.S., on the theories of negligence, lack of informed consent, and outrage. The complaint was amended to include a constitutional right to privacy claim. Later in 1983, both Mr. Strickland and Robert Weaver died, and in September 1984, the hospital, Dr. Storey, and Associated Internists moved for summary judgment on the grounds: (1) neither Mr. Strickland's nor Robert Weaver's causes of action survived their deaths, and (2) the remaining Weavers lacked standing as relatives to assert claims of emotional distress/outrage.

The trial court granted summary judgment, dismissing

the claims. The personal representatives for Mr. Strickland and Robert Weaver, and the Weavers appeal.

We are first asked to determine whether Mr. Strickland's claims involving his constitutional right to privacy and common law right to be free from bodily invasion were barred under the general survival statute. RCW 4.20.046(1) provides in relevant part:

> All causes of action by a person or persons against another person or persons shall survive to the personal representatives of the former and against the personal representatives of the latter, whether such actions arise on contract or otherwise, and whether or not such actions would have survived at the common law or prior to the date of enactment of this section: *Provided, however,* That no personal representative shall be entitled to recover damages for pain and suffering, anxiety, emotional distress, or humiliation personal to and suffered by a deceased.

█ This statute applies to actions brought by a personal representative on behalf of the estate for injuries suffered by a decedent that did not cause the decedent's death. *Higbee v. Shorewood Osteopathic Hosp.,* 105 Wn.2d 33, 37–38, 711 P.2d 306 (1985); *Walton v. Absher Constr. Co.,* 101 Wn.2d 238, 245, 676 P.2d 1002 (1984). Although this statute provides all causes of action survive to the personal representative, the original statute was amended to add a proviso precluding recovery of damages for "pain and suffering, anxiety, emotional distress, or humiliation personal to and suffered by a deceased". House Journal, 37th Legislature (1961), at 923; *Higbee,* at 36.

That limitation precludes Mr. Strickland and Robert Weaver from recovering damages for outrage; however, we are asked to determine whether Mr. Strickland's constitutionally–based privacy claims escape the application of the proviso. Although the issue is ordinarily framed in terms of an individual's decision to *refuse* life sustaining treatment, we adhere to the fundamental common law and constitutional principles that "competent adults have a right to determine what shall be done to their own bodies". *In re*

*Schuoler,* 106 Wn.2d 500, 506, 723 P.2d 1103 (1986); *In re Colyer,* 99 Wn.2d 114, 120-21, 660 P.2d 738 (1983). The merits of Mr. Strickland's case have not been reached and we make no judgment as to the facts alleged by plaintiff since no trial has occurred.

Nevertheless, notwithstanding the merits of the claims and the importance of the issues raised as they pertain to patient rights, recovery under the survival statute is limited to the prospective net accumulations of the deceased, *Criscuola v. Andrews,* 82 Wn.2d 68, 70, 507 P.2d 149 (1973), and is not provided for injuries "personal to that individual and essentially represent[ing] pain and suffering". *Wooldridge v. Woolett,* 96 Wn.2d 659, 666, 638 P.2d 566 (1981).

In setting forth the basis for the right of personal privacy under the Constitution, the Court in *Roe v. Wade,* 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705 (1973) ruled "only *personal rights* that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty,' are included in this guarantee of *personal privacy*". (Citations omitted. Italics ours.) *Roe,* 410 U.S. at 152. Damages under this theory are clearly "personal to and suffered by a deceased", RCW 4.20.046(1), and as such do not survive to the personal representative.

Mr. Strickland's constitutional claim is also being advanced under Title 42 U.S.C. § 1983, which was intended to create "a species of tort liability' in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution". *Carey v. Piphus,* 435 U.S. 247, 253, 55 L. Ed. 2d 252, 258, 98 S. Ct. 1042 (1978). The application of state survivorship statutes to section 1983 actions in cases where the constitutional deprivation does not cause death was addressed in *Robertson v. Wegmann,* 436 U.S. 584, 56 L. Ed. 2d 554, 98 S. Ct. 1991 (1978). *Robertson* held that since no federal survival provision existed, state law would apply in section 1983 actions if it was not inconsistent with federal law, *i.e.,* had no "independent adverse effect on the policies underlying § 1983." *Robertson,* 436 U.S. at 594. Although an adverse effect

might be found where state law does not provide survival of any tort actions or where it significantly restricts the type of actions that survive, the section 1983 policies of (1) compensating those injured by a deprivation of rights and (2) preventing the abuse of state power, are not undermined by abating the action against "one who is merely suing as the executor of the deceased's estate". *Robertson,* 436 U.S. at 592.

We recognize the policies behind section 1983 go beyond compensating the individual and seek to deter state abuse; nonetheless, the damages available under this section are personal and in the nature of anxiety, emotional distress, and humiliation. *See Carey,* 435 U.S. at 262–64. *See also Brink v. Griffith,* 65 Wn.2d 253, 258, 396 P.2d 793 (1964) (invasion of privacy action primarily concerned with compensation for injured feelings or mental suffering). The summary judgment ruling was correct.

The next issue is whether the Weavers have standing to bring a claim of outrage. Washington has adopted the elements of outrage as stated in the Restatement (Second) of Torts § 46 (1965):

> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress . . .
> (2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress
> (a) to a member of such person's *immediate family who is present at the time* . . .

(Italics ours.) *Lund v. Caple,* 100 Wn.2d 739, 742, 675 P.2d 226 (1984); *Contreras v. Crown Zellerbach Corp.,* 88 Wn.2d 735, 737 n.1, 565 P.2d 1173 (1977); *Grimsby v. Samson,* 85 Wn.2d 52, 59, 530 P.2d 291, 77 A.L.R.3d 436 (1975).

The Weavers contend the closeness of the relationship which developed during the years they were raised in Mr. Strickland's household brings them within the class of "immediate family" entitled to sue for outrage. They point to *Grimsby*'s reference to comment *l* of section 46 of the

Restatement, which states in part:

> Furthermore, the decided cases in which recovery has been allowed have been those in which the plaintiffs have been near relatives, *or at least close associates, of the person attacked.*

(Italics ours.) Restatement, at 79. The respondents argue the Weavers were not adopted, nor were they stepchildren, since Mr. Strickland's marriage to their mother was invalidated.

In adopting the Restatement elements of outrage, the *Grimsby* court explained their liability–*limiting* nature, *Grimsby,* at 59; moreover, in the context of negligent infliction of emotional distress, the court rejected the broad "foreseeability" theory for bystander recovery of *Dillon v. Legg,* 68 Cal. 2d 728, 441 P.2d 912, 69 Cal. Rptr. 72, 29 A.L.R.3d 1316 (1968), and noted:

> Again the logical difficulty of excluding the grandparent, the relatives, or others *in loco parentis,* and even the conscientious and sensitive caretaker, from a right to recover, if in fact the accident had the grave consequences claimed, raises subtle and elusive hazards in devising a sound rule in this field.

*Grimsby,* at 57 (quoting *Tobin v. Grossman,* 24 N.Y.2d 609, 249 N.E.2d 419, 301 N.Y.S.2d 554 (1969)).

In a later mental distress case based on negligence, *Hunsley v. Giard,* 87 Wn.2d 424, 436, 553 P.2d 1096 (1976), the court declined

> to draw an absolute boundary around the class of persons whose peril may stimulate the mental distress [of a bystander]. This usually will be a jury question bearing on the reasonable reaction to the event unless the court can conclude as a matter of law that the reaction was unreasonable.

Nevertheless, we acknowledge the necessity to set a rational and workable limit to the class of plaintiffs asserting a claim of outrage. We also decline to find *Grimsby*'s reference to the Restatement comment constituted an adoption of its language concerning "close associates". Therefore, we determine the class of "immediate family members" enti-

tled to recover under a theory of outrage consists of those who are permitted to bring wrongful death actions. *See Gates v. Richardson,* 719 P.2d 193, 198–99 (Wyo. 1986). Under that statute the Legislature has expressed the policy that recovery is available to spouses, children, stepchildren,[3] parents, and siblings. RCW 4.20.020. We conclude its limitation is reasonable and comports with *Grimsby's* reference to "immediate family"; and hold its rationale applies in an action for outrage. *See also Ramirez v. Armstrong,* 100 N.M. 538, 673 P.2d 822 (1983).

From an injury perspective it realistically matters little what the relationship is between a third person and the person who suffers severe emotional distress caused by intentional or outrageous conduct. A total stranger to a third person can be severely traumatized by that which occurs. In denying recovery, or even the existence of a cause of action, the court is balancing the interest of the person who suffers emotional distress in witnessing injury to another against the view that a negligent act should have some end to its legal consequences. Not every act which causes harm results in legal liability. *Hunsley,* at 434–35. Here, the Weavers are not included within the class of people categorized as immediate family members and therefore do not fall within the class of people entitled to bring this action. The Weavers were neither adopted nor actually stepchildren of Mr. Strickland.

The dissent's analogy to illegitimate children is not applicable since an illegitimate child has an arguable blood relationship with the deceased which brings it within the wrongful death statute. *Armijo v. Wesselius,* 73 Wn.2d 716, 440 P.2d 471 (1968). Here, the Weavers claim no blood relationship, either legitimate or illegitimate, nor do they come within the legally recognizable definition of stepchild, which is "a child of one's *wife or husband* by a former marriage". (Italics ours.) *In re Estate of Bordeaux,* 37

---

[3]The wrongful death and survival statutes were amended in 1985 to include "stepchildren" as beneficiaries. Laws of 1985, ch. 139, §§ 1, 2, p. 552.

Wn.2d 561, 563, 225 P.2d 433, 26 A.L.R.2d 249 (1950). If we were to define the class of people who may bring this action to include the Weavers, we would include within the definition of immediate family members not only spouses, children, stepchildren, parents and siblings, but also individuals who are *like* spouses, children, stepchildren, parents or siblings. Such an interpretation would be so ambiguous as to limit the class of plaintiffs who could assert a claim for outrage only by the imagination of counsel drafting the pleadings. The trial court was correct in dismissing the claims of the personal representative of James Weaver and Robert Weaver and their respective spouses based on a lack of standing.

Affirmed.

GREEN, J., concurs.

McINTURFF, C.J. (*concurring in part, dissenting in part*)—I concur with the majority's conclusion that dismissal on summary judgment was proper as to Mr. Strickland's and Robert Weaver's causes of action because the causes of action did not survive their deaths.

On the second issue, whether the Weavers had standing to bring a claim of outrage, I must dissent. The majority determined that the class of "immediate family members" entitled to recover under a theory of outrage consists of those who are permitted to bring wrongful death actions. Majority, at 268. The majority noted the wrongful death statute, RCW 4.20.020, was amended in 1985 to include "stepchildren" as beneficiaries. See footnote 3. Where the majority and I disagree is on the determination that the Weavers were not "stepchildren" for purposes of bringing an action for outrage.

The Weavers were the sons of Joan Weaver, whose marriage to Mr. Strickland was invalidated when it was discovered she was still married to another man. Mr. Strickland did not adopt James or Robert Weaver, but he raised the Weaver boys for over 10 years during their formative years,

wherein a father–son relationship developed.

There is precedent under the Washington wrongful death statute which supports my conclusion that the Weavers were stepchildren in spite of the fact that the marriage between Mr. Strickland and their mother was declared invalid. In *Armijo v. Wesselius,* 73 Wn.2d 716, 719, 440 P.2d 471 (1968), the court interpreted the word "child" in the wrongful death statute to include an illegitimate child, recognizing that statutes designed to benefit children should be liberally construed to benefit children regardless of the child's legitimacy or illegitimacy.

The purpose of adopting the standing limitations from the wrongful death statute is to come to a reasonable interpretation of "immediate family members" entitled to recover under the tort of outrage. It is unfair to exclude the Weavers, whose development of a close relationship with Mr. Strickland in no way could be impeded by the technical invalidity of Mr. Strickland's marriage to their mother. The dissent in *Klossner v. San Juan Cy.,* 93 Wn.2d 42, 605 P.2d 330 (1980) was written before the 1985 amendments to the wrongful death and survival statutes. *Klossner,* at 50, explained: "the modern tendency has been, and rightly so, to assimilate the stepchild to the natural child." The dissent in *Klossner* also stated at page 50:

> Just as they do not ask for the status of illegitimacy, neither do they become stepchildren through their own devices. . . .
>
> The trend in the law is toward according stepchildren rights equal to those of natural children.

Because here the Weavers' relationship with Mr. Strickland has more to do with their status as stepchildren in fact, if not technically in law, I would hold the Weavers have standing as "immediate family members" to maintain a cause of action based on the tort of outrage.

Review denied by Supreme Court July 1, 1987.