In re MATTHIAS' ESTATE.

GRAHAM v. MATTHIAS et al.

(Circuit Court, D. Washington, N. D. August 31, 1894.)

1. DESCENT AND DISTRIBUTION—ILLEGITIMATE CHILDREN — INHERITANCE FROM FATHER.

Under "An act in relation to marriage" (Laws Wash. T. 1854, p. 404), § 3, which provides that all children born of marriages declared void by section 2, and "all children born of persons living and cohabiting together, as man and wife, and all children born out of wedlock whose parents shall intermarry, shall be legitimate," the child of a man and woman who lived and kept house together as man and wife inherits from the father though he and the mother never intermarried.

2. SAME—PARENTAGE—SUFFICIENCY OF EVIDENCE.

In an action by G. to establish her right as the child and heir of M., deceased, who was a prominent citizen of a small town where G. was born, ten witnesses testified positively that for three or four years, during which time G. was born, her mother and M. lived together as husband and wife, while seven witnesses, all well acquainted with M., never saw G.'s mother at M.'s house, nor heard that she lived there. *Held*, that the evidence showed that G.'s father and mother lived together as husband and wife, and that G. was his heir, and entitled to his estate as against collateral heirs.

This is a proceeding by Rebecca Lena Graham to establish her right as a child and heir at law of Franklin Matthias, deceased, and to receive from his administrator the property in his hands for distribution, as against C. Matthias and others, his collateral heirs.

Arthur, Lindsay & King and Turner & Ellsworth, for claimant.
Lichtenberg, Shepard, Lyon & Denny, for defendants.

HANFORD, District Judge (orally). This case involves a contest on the part of Rebecca Lena Graham in which she asserts, against the persons named as defendants, her right as an heir at law of Franklin Matthias, deceased, to receive from the administrator of his estate the residue remaining after the payment of costs and expenses of administration and all indebtedness. She claims to be a daughter and only child of Franklin Matthias. The other parties to the suit, who claim to be the lawful heirs, are collateral heirs; and no one other than Mrs. Graham claims to be a lineal descendant.

The questions in the case are whether Mrs. Graham is in fact the daughter of Franklin Matthias, whether she is his legitimate daughter, and under the laws of this state entitled to inherit his property. A large number of witnesses have been called to testify in support of Mrs. Graham's claim, and to dispute it. I find in the testimony a great deal that is mere surmise, a great deal of gossip, a great deal of rumor, and a great deal that I regard as fiction. Some of the witnesses are not very well informed; others are reckless. I repudiate entirely all the testimony in regard to the marriage ceremony between Frank Matthias and Mrs. Graham's mother ever having taken place. I repudiate

as utterly false the testimony in regard to Mrs. Graham having been in her infancy christened by the name of Rebecca Matthias, in the presence of prominent citizens of Seattle. I repudiate as utterly false the testimony given in the case in regard to the conduct of Capt. Gansevoort, of the American man of war Decatur, at the time of the battle with the hostile Indians at Seattle, in the year 1856. Capt. Gansevoort was a credit to the American navy, not only for his competency and ability as a commanding officer, but for his courtesy and gentlemanly conduct on that occasion. He was a thorough gentleman, and, at the time when in this record his name is connected with vile conduct, he was doing everything that generosity and courtesy would prompt a gentleman to do in protecting and rendering aid, assistance, and comfort to the wives and children of the earliest settlers of Seattle. This testimony is brought in unnecessarily, and I am not willing that it should go out as history, without receiving at least my condemnation.

Now, coming to the facts detailed in the evidence, Mrs. Graham herself has testified to the effect that, from what her mother told her and other reports, she regarded herself as the daughter of Frank Matthias. She has no recollection of ever having been in his house, or in his company, or of speaking to him. In her childhood she avoided him, because her mother taught her to fear him; and in her mature years she was too proud to make advances towards him. He often seemed to be following her, and, for a time after her first marriage, daily passed her dwelling house, and, if her little children were playing outside, he would stop and observe them in an interested manner; but he never in a manly way sought her acquaintance. Her testimony cannot be regarded as tending to prove that her mother was married to Matthias, or that she ever lived with him as his wife, in the sense of dwelling in his house and performing the duties of housekeeper, or that Matthias ever by any public act acknowledged her as his wife. Six witnesses (Samuel F. Coombs, D. B. Ward, Rev. Daniel Bagley, T. D. Hinckley, M. B. Maddocks, and E. A. Thorndike) gave testimony tending to prove that Matthias, for a time before and after the birth of the complainant, maintained relations of intimacy with her mother, who was an Indian woman, named Peggy, and that the couple were reputed to be cohabiting together; but they all fail to testify positively and explicitly to the fact that Peggy did actually live with Matthias openly, or ever performed the duties of housekeeper for him. Three Indians called as witnesses for the complainant, viz. William Rogers, Chief William, and Jake Foster, have testified that Peggy and Matthias were actually married, and that said marriage was followed by actual cohabitation. Foster claimed to have been present when Matthias obtained the consent of the relatives of the bride, and when they conducted her to his house to be married; and that on the next day he attended a feast whereby the marriage was celebrated; and that afterwards he visited the married couple at their house; and that they lived together; and that, while so living, the complainant was born. Rogers and Chief

William testify to the same facts, and also claim to have been present when the marriage ceremony was performed, which they describe in detail and with extravagant eloquence. According to their recital, the chiefs and relatives went in a procession to the shack in which Matthias was then living. Three chiefs, this same William being one of them, then required each of the contracting parties to repeat 12 times the vow to assume marriage relation with each other. According to William, the bride vowed in these words: "Yes, Frank Matthias is going to be my husband, and I shall stay with him until death parts us." These stories are transparent, and manifestly false. Ten other witnesses, viz. Frank Dolan, Ben Solomon, W. F. Haffner, Richard Jeffs, A. S. Pinkham, William Deshaw, D. H. Webster, T. O. Williams, H. A. Spithill, and Mrs. Blakely, all testify, positively, that for three or four years, during which time the complainant was born, Matthias and Peggy did live together as husband and wife. On the other hand, seven witnesses for the defendants, viz. Hillory Butler, A. A. Denny, Dexter Horton, E. M. Smithers, W. H. Surber, Henry Van Asselt. and Mrs. Wyckoff, all of whom were well acquainted with Matthias, never saw Peggy at his house, nor heard that she lived there. Mr. Matthias being a prominent man in a small town, as Seattle was then, their testimony, although negative, is equal in power to positive testimony contradicting the statement that Peggy and Matthias lived together.

From consideration of all the evidence, I am well convinced that Matthias and Peggy were never married. I am also convinced that Frank Matthias was the father of this complainant. To entitle her to inherit his estate, being his daughter, it is not absolutely necessary that there should be proof of a marriage between her parents. If they lived together as man and wife during the period of time within which she was born, their so living together would, for the purpose of determining the rights of their child, be equivalent to a marriage, under a statute of Washington territory, enacted at its first session. That is the third section of an act entitled "An act in relation to marriage" (Laws Wash. T. 1854, p. 404), which provides that "All children born of marriages declared void by the preceding section, and all children born of persons living and cohabiting together, as man and wife, and all children born out of wedlock whose parents shall intermarry, shall be legitimate." This statute is somewhat peculiar. It is made for the protection and benefit of children. Without attempting to legislate as to the status of the parents, or determining or fixing their rights as married people, it does give rights to the innocent offspring; and, having that object in view, effect should be given to it according to its spirit, because it is a just law. Where children are born under such circumstances as to leave no just ground for doubting their parentage, and where there is no probability of injustice being done by imposing upon a man spurious offspring, it seems to me right that his children should inherit his estate. This law provides not only for the children of void mar-

riages, and children born out of wedlock whose parents afterwards married, but provides specifically for children of unmarried persons who live and cohabit together as man and wife, and declares that such children shall be legitimate. Now, if the testimony of Richard Jeffs, David H. Webster, and those other people to the actual fact that Peggy and Frank Matthias did live together as man and wife, and kept house together before and after the birth of this plaintiff, be true, then, under that law, she is entitled to all the rights of a legitimate child of Frank Matthias. Cope v. Cope, 137 U. S. 682, 11 Sup. Ct. 222.

The question which I have to decide on this evidence is whether it is proved that Frank Matthias and Peggy did so live together. The testimony of Mr. Smithers and Mr. Butler and others, who were intimate friends of Frank Matthias, that they did not know that to be the fact, is perhaps inconsistent with the fact. It is hard to imagine that it could be so, and neighbors and friends of Mr. Matthias not know it; but I cannot say that it is impossible. He may have been cunning with them, and less guarded with others. These other witnesses who testified positively to the fact had equal means of knowledge with those who deny it. They had every opportunity to know it if it were so. They have no interest in this case to induce them to testify falsely, and, unless Frank Matthias and Peggy lived together, they have willfully, and without any inducement or reason for it, testified to that which is absolutely untrue, and which they must have known was untrue. Now, there are 10 of them, I find, who have with particularity and positiveness asserted that upon different occasions they found this woman in Frank Matthias' house, doing his housework; that he recognized her as his woman, and made no concealment of it. I might possibly discredit the testimony of some of these witnesses, on the ground that they are not worthy of belief; but it is straining matters a great deal to discredit the testimony of 10, including men of mature age and good repute. I do not believe that Mr. Smithers, Mr. Van Asselt, and Mr. Horton have made any misstatements, and I do not have to find that they testified falsely in order to find the fact in favor of this complainant. It is hard to understand how they could have been deceived in that matter. Still, it is possible that they might have been.

My conclusion is that there is a fair preponderance of the evidence, in favor of this complainant, to the fact that her mother and Frank Matthias lived together as man and wife before and after the complainant's birth; and, upon that preponderance of evidence, she is entitled to a finding in her favor. The laws of this state in force at the time of the death of Frank Matthias entitle this complainant, as his only lineal descendant, to receive his estate; and I will decree that she is so entitled.