# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Estate of

CALVIN T. RAY, a/k/a CALVIN
THOMAS RAY JR. and TOD RAY.


MARK D. STINE,

          Appellant,

    v.

WASHINGTON STATE,
DEPARTMENT OF REVENUE,

          Respondent.

No. 79904-5-I

DIVISION ONE

UNPUBLISHED OPINION

APPELWICK, J. — Stine appeals from an order granting summary judgment for and dismissing claims against the Washington State Department of Revenue. Stine contends the trial court erred in determining he had no legal right to inherit intestate from his stepfather, Calvin T. Ray, Jr. Stine argues this court should interpret RCW 11.04.095 to grant him the right of inheritance. Alternatively, he argues the court should use its equitable powers to allow him to inherit Ray's estate by holding that he was de facto adopted by Ray, or that Ray was Stine's de facto father. We affirm.

FACTS

On April 5, 2011, Calvin T. Ray, Jr., passed away. Ray died intestate without being survived by any person entitled to his estate under Washington law. Ray was a resident of the State of Washington at the time of his death. Mark Stine was his only stepchild

Stine's mother, Nancy Skinner, married Ray when Stine was 10. Stine, Skinner, and Ray lived together in the same home until Stine left home at the age of 21. Skinner and Ray dissolved their marriage on January 3, 1990. Ray and Stine remained close after the dissolution of his marriage to Ray's mother. Counsel for Stine declared that Ray expressly stated to several individuals his intent to make Stine his beneficiary. Ray never formally adopted Stine.

On March 27, 2012, the King County Superior Court issued a final order in probate directing his estate escheat to the State of Washington. The Washington Department of Revenue (DOR) holds Ray's estate, which totaled $3,650,000 in 2018. In July 2018, Stine filed a postprobate petition in King County Superior Court for a determination of his right to inherit. Stine asserted two legal theories in his petition. First, he claimed that he was entitled to inherit under RCW 11.04.095, which provides limited circumstances by which stepchildren may inherit intestate. Second, he argued that the court should rule that he was de facto adopted by Ray. The DOR moved to dismiss. In November 2018, the court ordered the parties to first proceed to mediation under RCW 11.96A.300. Mediation was unsuccessful.

The DOR then moved for summary judgment. On March 29, 2019, the trial court granted the motion for summary judgment and dismissed the action.

Stine appeals.

DISCUSSION

This court reviews summary judgment rulings de novo. Activate, Inc. v. Dep't of Revenue, 150 Wn. App. 807, 812, 209 P.3d 524 (2009). Summary judgment is appropriate if the record shows there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Anica v. Wal-Mart Stores, Inc., 120 Wn. App. 481, 487, 84 P.3d 1231 (2004). A material fact is one upon which the outcome of the litigation depends. Clements v. Travelers Indem. Co., 121 Wn. 2d 243, 249, 850 P.2d 1298 (1993). The court must consider the facts submitted and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Id. The motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. Cochran Elec. Co. v. Mahoney, 129 Wn. App. 687, 692, 121 P.3d 747 (2005).

I.  RCW 11.04.095

Whether Stine should inherit under RCW 11.04.095 is a legal question that this court reviews de novo. See Bank of Am., NA v. Prestance Corp., 160 Wn.2d 560, 564, 160 P.3d 17 (2007) (holding whether equitable relief is appropriate is a question of law).

Intestate succession is governed by Washington's general descent and distribution statute. RCW 11.04.015. Where a person dies intestate with no surviving spouse or domestic partner, their estate descends next to their issue. RCW 11.04.015(2)(a). "Issue" is defined under Title 11 RCW to include all lineal

3

descendants, including adopted individuals. RCW 11.02.005(8). "Stepchildren" are not expressly included within the definition of "issue." See id. If an individual dies intestate and is not survived by anyone entitled to their estate, their property escheats to the State. RCW 11.08.140. RCW 11.04.095 provides a narrow set of conditions under which stepchildren may inherit intestate from their stepparents. Stine asserts this court should interpret RCW 11.04.095 to allow him to inherit Ray's estate, in keeping with the policy underlying RCW 11.04.095.

The language of RCW 11.04.095 lays out several requirements which must be met for a stepchild to inherit intestate. First, the stepchild's parent must predecease the surviving stepparent. Id. Second, substantially all of the parent's property must pass to the surviving stepparent either in death or conveyed before death. Id. Third, the stepparent subsequently dies intestate resulting in escheat but for inheritance by the stepchild. Id. Thus, where the natural parent dies first, and their property is transferred to a stepparent, this statute provides a way for property of the natural parent to return to the stepchild upon the death of an otherwise intestate stepparent.

Stine asks this court to interpret RCW 11.04.095 broadly to include his circumstances "consistent with the underlying purpose of the code" and broadened understandings of what constitutes "family."

A. Evolution of Washington Probate Law

First, Stine argues probate law has moved beyond anachronistic bloodline conceptions of property inheritance. Stine highlights the enactment of RCW 11.04.095 as part of a comprehensive probate code revision in 1965. He cites to

a law review article discussing the Legislature's repudiation of the "'anachronistic doctrine of ancestral property.'" (Quoting Robert A. Stewart & John R. Steincipher, Probate Reform in Washington, 39 WASH. L. REV. 873, 878-879 (1965)). However, Stine does not provide any caselaw in which the court has used the 1965 probate reforms to assign more inclusive meaning to an eligible class of takers under current probate statutes.

Stine highlights several other shifts in probate law, such as changes to antiquated notions of "legitimacy" in defining children. Here, Stine relies on In re Matthias' Estate, 63 F. 523, 525 (C.C.D. Wash. 1894). Matthias' Estate did not address the question of law in this case, but concerned the third section of "'[a]n act in relation to marriage,'" which expressly provided "'all children born of persons living and cohabiting together, as man and wife'" were eligible to inherit. Id. (quoting LAWS OF 1854, p. 404). The question before the court was whether the plaintiff's parents, who never legally wed, lived together as man and wife. Id. The court did not interpret the statute beyond its plain language to reach its conclusion. Id.

Additionally, Stine argues the recognition of stepchildren as beneficiaries under taxation provisions and in wrongful death actions evidences a legislative intent for stepchildren to inherit. Stine cites In re Estate of Bordeaux, 37 Wn.2d 561, 594, 225 P.2d 433 (1950), which recognized stepchildren as belonging to the same class as natural children for purposes of inheritance taxation. However, the relevant inheritance tax statute specifically designated that any "'child or stepchild'" of the deceased belong to class A for determining rates of taxation. Id. at 562-63

(emphasis omitted) (quoting Rem. Supp. 1943, § 11202, P.P.C. § 974-21). Here, "stepchild" is not expressly provided in the language of RCW 11.04.095. Similarly, stepchildren are now entitled to recover in wrongful death actions, but Stine himself concedes this change occurred through statutory reform.

Additionally, Stine contends that amendments to Title 11 RCW recognizing increased rights of nontraditional heirs and domestic partnerships are evidence of the legislature's desire for broadened interpretations of Title 11 RCW. But, again, these changes also evidence the legislature's ability to amend Title 11 RCW to comport with its new policy positions.

Had the legislature intended to make stepchildren equivalent to children in all instances of intestate law, it could have simply amended the definition of "issue" in RCW 11.02.005(8) to include "stepchildren," but it has not. To this point, the DOR cites to In re Estate of Henry, 189 Wash. 510, 513-14, 66 P.2d 350 (1937), detailing the legislature's modification of Washington's former inheritance tax code to classify both "children" and "stepchildren" as the same class of beneficiaries. If Title 11 RCW is inconsistent with trends in escheat or expanding notions of family, it is for the Legislature to enact changes in policy.

B. Policy Disfavoring Escheat in Washington

Next, Stine contends escheat is disfavored in Washington. He cites In re Estate of Little, 106 Wn.2d 269, 284, 721 P.2d 950 (1986), to support his claim. This case is distinguishable from Little. That case concerned a dispute between two groups of potential heirs over the estate of an intestate decedent. Id. at 281. Reading Washington's general descent and distribution statute and its ancestral

6

estate statute literally, their rights to inherit extinguished each other, resulting in escheat under RCW 11.08.140. See Little, 106 Wn.2d at 283-84. The court held the legislature could not have intended for those two statutes to conflict, resulting in escheat. Id. at 284. Therefore, the court gave preference to the more specific ancestral estate statute. Id.

Here, there is no dispute between two groups of potential heirs or two conflicting statutes. Additionally, the outcome of Little, 21 years after the 1965 probate code reforms, highlights the enduring recognition of bloodlines and ancestral property. Robert A. Stewart & John R. Steincipher, Probate Reform in Washington, 39 WASH. L. REV. 873, 878-879 (1965). This rebuts Stine's earlier arguments regarding the evolution of Washington probate law.

A general policy disfavoring escheat does not mean the legislature intended that escheat will never occur under any circumstances. On the contrary, the legislature provides for intestate escheat expressly under Title 11 RCW, barring exceptional circumstances outlined in statutes such as RCW 11.04.095.

### C. Plain Language of Statute

Stine concedes that, under the plain language of the statute, he does not meet the first two statutory requirements since his mother did not predecease Ray. Only the third statutory requirement, that Stine's stepparent subsequently died intestate resulting in escheat but for inheritance by the stepchild, is present here. RCW 11.04.095(3). Stine does not cite caselaw in which a court has interpreted RCW 11.04.095 to allow for inheritance in similar circumstances.

Still, he argues this court should interpret the statute to allow him to inherit "consistent with other state statutes and caselaw and the unstoppable evolution of society's view of family." He contends "[i]t is a natural and logical progression for the [c]ourt to equitably fill this statutory gap." For this assertion, he cites In re Parentage of L.B., 121 Wn. App. 460, 475-476, 89 P.3d 271 (2004), rev'd in part on other grounds, 155 Wn.2d 679, 122 P.3d 161 (2005). The L.B. court recognized its ability to grant common law remedies where they are not preempted by legislation. 121 Wn. App. at 476 n.2. But, the court also clearly stated "unambiguous statutes are not open to judicial interpretation." Id. at 473.

The plain meaning rule directs courts to apply words per the meaning they are ordinarily given. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 11, 43 P.3d 4 (2002). It is unnecessary to resort to aids of construction where a statute is unambiguous. See Id. at 12. In recognition of separation of powers, courts "should resist the temptation to rewrite an unambiguous statute to suit our notions of what is good public policy." State v. Jackson, 137 Wn.2d 712, 725, 976 P.2d 1229 (1999). Where a statutory mandate exists, courts will not employ equitable principles in derogation of that mandate. See Rhoad v. McLean Trucking Co., Inc., 102 Wn.2d 422, 427, 686 P.2d 483 (1984). This court has declined to judicially modify a statutory child support scheme where a partner did not formally adopt the child. State ex rel. D.R.M v. Wood, 109 Wn. App. 182, 194-95, 34 P.3d 887 (2001).

Here, there is no gap in the statute. This court does not need to look further than the plain language of the statute. A stepparent has clear options to ensure

their stepchild inherits their estate. Here, the legislature has expressly carved out limited exceptions to a bar on intestate inheritance by stepchildren with RCW 11.04.095.

It may be true, as Stine contends, that his stepfather Ray always intended that he would be his heir. But, Ray never pursued any of the available instruments to ensure succession. The legislature enacted a narrowly-tailored intestate exceptions for stepchildren, rather than add stepchildren to the definition of issue. Neither general policy considerations nor evidence of the likely intentions of the decedent are a sufficient basis to override clear legislative policy in the name of equity.

### D. RCW 11.04.095's Section Heading

Finally, Stine argues the "title" of the statute, "Inheritance from stepparent avoids escheat," indicates the legislature's intent to broadly extend inheritance rights to stepchildren as well as its general disfavoring of escheat under RCW 11.04.095. This argument lacks merit.

Stine relies on Klossner v. San Juan County, 93 Wn.2d 42, 47, 605 P.2d 330 (1980), which described RCW 11.04.095, to assert that "[w]ith this statute, the legislature has extended inheritance rights to stepchildren when the property would otherwise escheat to this state." But, this statement was to distinguish the wrongful death statute at issue in Klossner, which unlike RCW 11.04.095, was silent with regards to stepchildren. Id. Additionally, Klossner cites RCW 11.04.095 to evidence how enhancements of stepchildren's rights have come by statute and have been narrow in scope. Id. at 46-47.

Further, RCW 11.04.095's section heading has no relevance to this case. Where a statute is ambiguous, section headings enacted as a part of the act may assist in determining legislative intent, but they do not control the plain meaning. See State v. Lundell, 7 Wn. App. 779, 781-82, 503 P.2d 774 (1972). These headings are only relevant if "they are placed in the original act by the legislature without any limiting provisions." Id. at 782 n.1. Here, the statute is unambiguous, so section headings are not needed to determine legislative intent. Additionally, the "title" Stine cites is the section heading for RCW 11.04.095. And, Title 11 RCW contains an express limiting provision stating section headings within Title 11 RCW do not constitute any part of the law. RCW 11.02.001.

We hold that Stine is not permitted to inherit Ray's estate under RCW 11.04.095.

## II. Ray As Stine's De Facto Father

In the alternative, Stine argues that Ray was his de facto father. A lawfully adopted child is entitled to all rights of a natural child with regards to the adoptive parent, including rights of inheritance. RCW 26.33.260. Whether to assign equitable relief is a legal question, and as such, review is de novo. Niemann v. Vaughn Cmty. Church, 154 Wn.2d 365, 374, 113 P.3d 463 (2005); Norean Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 483, 254 P.3d 835 (2011).

An individual must be alive at the time a parentage action is commenced, and must claim to be the de facto parent of a minor child while the child is alive. RCW 26.26A.440(1)-(2). Here, Ray is deceased, Stine is not a minor child, and

Stine does not argue that Ray was ever adjudicated to be Stine's de facto parent. Stine argues that Ray was never adjudicated as such because such claims only arise during familial disputes, of which there were none here. Yet, that is precisely why this doctrine is inapplicable to the facts of this dispute. De facto parentage was never designed as an equitable relief for children to establish rights of inheritance. The statutory requirement that both parties be alive at commencement evidences the doctrine's inapplicability to probate law.

This court declines to expand the doctrine of de facto parentage to cover the circumstances of this dispute.

III.  De Facto Adoption

Stine also argues in the alternative this court should utilize its equitable powers to hold that he was de facto adopted by Calvin Ray. Stine asserted this theory in his postprobate petition.

De facto adoption, also referred to as "equitable adoption" or "adoption by estoppel" is a common law doctrine entitling a person to the same rights they would have if legally adopted. Modern Status of Law as to Equitable Adoption or Adoption by Estoppel, 122 A.L.R. 5th 205 (2004).

Citing Thier, the DOR asserts that de facto adoption has never been recognized by a Washington appellate court. In re Marriage of Thier, 67 Wn. App. 940, 947 n.5, 841 P.2d 794 (1992) (noting no Washington case had recognized the doctrine). Stine is unable to cite any case where a Washington court has recognized the doctrine since Thier, but notes many foreign jurisdictions have as of 2004.

In Washington, adoptions are governed by statute, not common law. In re Estate of Renton, 10 Wash. 533, 542, 39 P. 145 (1895). In Renton, our Supreme Court held that stepchildren were prohibited from inheriting from their intestate stepfather as de facto adoptees because adoption in Washington is "purely statutory." Id.

Stine asserts that Renton is no longer controlling because it "would have been decided differently" today rendering it "simply not applicable and controlling." Stine's argument that Renton is no longer binding precedent is unsupported by caselaw. Therefore, we decline to recognize the common law doctrine of de facto adoption.

Stine is not eligible to inherit intestate under RCW 11.04.095. His other arguments lack merit. The trial court did not err in granting the State's motion for summary judgment and dismissing the action.

We affirm.

_Appelwick, J._

WE CONCUR:

_Brennan, J_      _Verellen, J_

12