IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Estate of AMALIA P. FERARA, the FERARA LIVING TRUST, the IVAN FERARA FAMILY TRUST, and the AMALIA FERARA TRUST. _____ DIANA M. FERARA, as the Personal Representative of the Estate of Amalia Ferara, and as Trustee of the Ivan Ferara Living Trust, the Ferara Family Trust, and the Amalia Ferara Trust, Respondent, v. ALICIA K. FERARA, ALBERT E. FERARA, KRISTY L. FERARA, NANCY S. FERARA, and JOHNNY T. FERARA, Appellants. | No. 83404-5-I DIVISION ONE ORDER DENYING MOTION FOR RECONSIDERATION AND WITHDRAWING AND SUBSTITUTING OPINION |

Appellants Kristy Ferara, Nancy Ferara, and Johnny Ferara filed a motion to reconsider the opinion filed on September 5, 2023, in the above case. Respondent Diana Ferara filed an answer opposing the motion to reconsider and seeking additional fees and costs.

The panel has determined that Appellants' motion for reconsideration should be denied. Respondent's request for fees and costs is denied. The panel has also

No. 83404-5-I/2

determined that the opinion in the above-entitled case filed on September 5, 2023 should be withdrawn and a substitute published opinion be filed.

Now, therefore, it is hereby

ORDERED that the opinion filed on September 5, 2023, is withdrawn and a substitute published opinion shall be filed.

_Chung, J._

_Mann, J._

_Dwyer, J._

2

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Estate of AMALIA P. FERARA, the FERARA LIVING TRUST, the IVAN FERARA FAMILY TRUST, and the AMALIA FERARA TRUST.<br><br>_____<br><br>DIANA M. FERARA, as the Personal Representative of the Estate of Amalia Ferara, and as Trustee of the Ivan Ferara Living Trust, the Ferara Family Trust, and the Amalia Ferara Trust,<br><br>     Respondent,<br>  v.<br><br>ALICIA K. FERARA, ALBERT E. FERARA, KRISTY L. FERARA, NANCY S. FERARA, and JOHNNY T. FERARA,<br><br>     Appellants. | No. 83404-5-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

CHUNG, J. — When two of her siblings would not accept the distribution of a property as directed by a family trust, trustee Diana Ferara petitioned under TEDRA[1] to compel the distribution. Her siblings filed a counterclaim for breach of fiduciary duty, in part based on alleged mismanagement of the trust property. After determining that the siblings failed to proffer admissible evidence under CR

---

[1] Trust and Estate Dispute Resolution Act (TEDRA), ch. 11.96A RCW.

56(e), the trial court granted Diana's motion for summary judgment and dismissed the counterclaim. The court also ordered the two siblings to accept their distribution or be deemed to have constructively disclaimed their interest in the property and awarded costs and fees to Diana. Diana's siblings appeal.

Statements that are not based on personal knowledge do not satisfy CR 56(e). Nor are documents automatically rendered admissible if the party moving for summary judgment submits them with its motion without proper supporting affidavits. Finally, the court's order of constructive disclaimer by two of the beneficiaries of their interests in a trust asset was within its broad authority under TEDRA "to proceed with such administration and settlement in any manner and way that to the court seems right and proper," RCW 11.96A.020(2), as it did not supersede the disclaimer statute, RCW 11.86.031, and it was consistent with the trustors' intent. Therefore, the trial court did not err in granting Diana's motion for summary judgment on her TEDRA petition. We affirm.

FACTS

Ivan and Amalia Ferara created the Ferara Living Trust. The Living Trust was funded with four properties: one in Bellevue, one in Duvall, and two in San Pedro, California, at 729 and 735 West 22nd Street (the 729 Property and 735 Property, or the Properties). The Living Trust provided that, on the death of either parent, its assets were to be apportioned between a trust bearing the surviving parent's name and the Ivan Ferara Family Trust. The Living Trust nominated Ivan and Amalia's daughter Diana as successor trustee for these two trusts and for

2

the Living Trust, with their daughter Kristy as the next in line.[2] The Living Trust specified that, upon the death of the surviving parent, the Bellevue property "shall be distributed" to Albert, the Duvall property to Nancy and Johnny, the 729 Property to Diana and Nancy, and the 735 Property to Alicia and Kristy.

When Ivan died in 2016, per the terms of the Living Trust, Amalia became its trustee. Amalia resigned her role as trustee of the Living Trust and declined to serve as trustee of the Family Trust and the Amalia P. Ferara Trust. Diana accepted the role of trustee of the three trusts. As trustee, in 2016, Diana had the two trust properties in California inspected by a local realtor and hired a property management company to manage them.

When Amalia died in February 2020, Diana distributed the properties to the trust's beneficiaries. Kristy and Alicia, however, refused to accept distribution of the 735 Property until it was returned to "a good and reasonable condition." They commissioned an inspection report of the 735 Property in August 2020 by Frank Overbeek (the Overbeek Report).

Diana filed a TEDRA petition in December 2020 to require Kristy and Alicia to either accept transfer of title to the 735 Property or be deemed to have disclaimed their interest in it. She also requested costs and fees.

---

[2] There were six Ferara children: Alicia, Albert, Kristy, Diana, Nancy, and Johnny. Because the parties share a surname, we use their first names for clarity, as did the parties' briefing. Albert is not a party to this litigation. Alicia was a party to the litigation below. She withdrew from this appeal prior to passing away in October 2022.

Four of Diana's five siblings counterclaimed against her, including a claim that Diana breached her fiduciary duty to keep the property in good condition.[3] The Siblings' response to Diana's TEDRA petition attached a 2017 inspection report Diana requested from the property management company of both the upper and lower rental units at the 735 Property (the 2017 Inspections), and the Overbeek Report. However, there was no declaration or affidavit attesting to either the 2017 Inspections or the Overbeek Report. Instead, each sibling signed a "verification statement," stating each had personal knowledge of the contents of the response "as they pertain to myself and the matters discussed" and verifying that the response's factual statements "concerning myself, my activities, my knowledge and my intentions are true" under penalty of perjury.

The Siblings moved for partial summary judgment on their TEDRA defenses, counterclaims, and request for costs and fees. Diana moved for summary judgment dismissing the Siblings' counterclaims and ordering Kristy and Alicia to accept the 735 Property or disclaim their interest in it, and for costs and fees. In support of her motion, Diana submitted an expert declaration stating that she had satisfied her fiduciary duties, a declaration from a real estate agent who inspected the 729 and 735 Properties in 2016 and again in 2021, and a declaration from the property management company she hired to manage the Properties. Also filed as exhibits to her attorney's declaration were her Siblings' answers to her interrogatories, which stated they "incorporated" the Siblings'

_____

[3] Appellants' briefing refers to these four—Alicia, Kristy, Nancy, and Johnny—as the Siblings. We do the same.

TEDRA response and verified counterclaims and "attach[ed]" copies of both the 2017 Inspections and the Overbeek Report. The Siblings' response to Diana's summary judgment motion, in turn, also purported to "incorporate and attach" their verified TEDRA counterclaims, the 2017 Inspections, the Overbeek Report, and their attorney's letter to Diana.

At an October 2021 hearing on both Diana's and her Siblings' summary judgment motions, the trial court rejected the Siblings' claim that it lacked jurisdiction over the California property and lacked the authority to order constructive disclaimer of Kristy's and Alicia's interest in the 735 Property. Further, the court denied the Siblings' breach of fiduciary duty counterclaim and granted Diana's motion to dismiss all the Siblings' counterclaims. Finally, the court ordered Kristy and Alicia to accept transfer of title to the 735 Property within 30 days or be deemed to have disclaimed their interest in it.

Diana later moved for fees and costs, which the court awarded to her, to be paid by the Siblings. The Siblings timely appeal.

## DISCUSSION

The Siblings assign error to the trial court's ruling that the Overbeek Report and other evidence was inadmissible, its dismissal of their claim that Diana breached her fiduciary duties, its order of the constructive disclaimer of Kristy and Alicia's interest in the 735 Property, and its award of attorney fees to Diana.[4]

---

[4] The Siblings assign error only to the court's award of attorney fees, not costs, which were also awarded to Diana.

On appeal of an order granting summary judgment, we review de novo whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); see Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). We view all facts and reasonable inferences in the light most favorable to the nonmoving party. Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012). " '[B]are assertions that a genuine material issue exists' do not constitute facts sufficient to defeat a motion for summary judgment." SentinelC3, Inc. v. Hunt, 181 Wn.2d 127, 140, 331 P.3d 40 (2014) (quoting Trimble v. Wash. State Univ., 140 Wn.2d 88, 92-93, 993 P.2d 259 (2000)). "Instead, an affidavit opposing summary judgment must (1) be made on the affiant's personal knowledge, (2) be supported by facts admissible in evidence, and (3) show that the affiant is competent to testify to the matters therein." Id. (citing CR 56(e)).

I.      Admissibility of Evidence Supporting Summary Judgment Motions

The Siblings argue that the evidence they submitted to establish a question of material fact regarding a breach of fiduciary duty—i.e., evidence of the poor condition of the 735 Property—was admissible on two grounds. They argue it was admissible, first, because it was based on their personal knowledge and sworn under penalty of perjury and, second, because Diana attached it to her motion for summary judgment. We disagree with both arguments.

A. Personal knowledge and authentication requirements

The Siblings argue that the evidence they rely on to support their motion for partial summary judgment and to oppose Diana's motion for summary judgment was admissible because it was based on personal knowledge and sworn under penalty of perjury. Specifically, they claim because their counterclaim complaint was "verified" through accompanying verification statements, the statements of facts in the counterclaim, as well as exhibits attached to their complaint, were admissible.[5]

CR 56(e) specifies the acceptable methods for presenting facts for consideration at the summary judgment stage:

> (e) Form of Affidavits; Further Testimony; Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. . . .

(Boldface omitted.)

Thus, "an affidavit opposing summary judgment must (1) be made on the affiant's personal knowledge, (2) be supported by facts admissible in evidence,

---

[5] In response to Diana's question asking the Siblings to set forth all facts relating to breach of fiduciary duty, the Siblings' interrogatory answers refer to their verified counterclaim, as well as to a November 2020 letter sent by their attorney to Diana's attorney that was also attached to their TEDRA response. To the extent the Siblings argue that their discovery responses provide substantive evidence and to the extent the discovery responses rely in turn on the admissibility of the statements in, and exhibits attached to, the "verified" counterclaim, our analysis need not separately address the Siblings' discovery responses.

7

and (3) show that the affiant is competent to testify to the matters therein." SentinelC3, 181 Wn.2d at 140 (citing CR 56(e)).

Separate from the requirement in CR 56(e) that supporting affidavits must be made on personal knowledge, ER 901 requires that documents be authentic. Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co., 122 Wn. App. 736, 745-46, 87 P.3d 774 (2004). "Authentication is a threshold requirement designed to assure that evidence is what it purports to be. ER 901 sets forth a number of ways that evidence may comply with the rule. For example, the rule allows documents to be admitted based on the testimony of witnesses with knowledge." Id. at 746-47 (footnotes omitted).

The Siblings' counterclaim, contained in their response to Diana's TEDRA petition, alleges that Diana breached her fiduciary duty by failing to maintain the 735 Property in good and reasonable condition. Along with making factual allegations, the counterclaim attached as exhibits the 2017 Inspections and the Overbeek Report, which both contain photos. The Siblings contend that their verification statements establish they have personal knowledge of the factual statements in their counterclaim and its attached exhibits.

The Siblings' counterclaim repeats verbatim some statements from the Overbeek Report and summarizes others. For example, it asserts, "on information and belief," that the 735 Property lacks the certificate of occupancy required in California for a rental property. Further, the counterclaim "assert[s]" that Diana failed to maintain the 735 Property in a good and reasonable

condition, and concludes that Diana "has breached" her fiduciary duty. And it alleges Diana "may" have exposed the property to "potential" criminal liability.

Each Sibling's verification statement for the counterclaim states:

> I, [Sibling], declare:
>
> I am a Respondent and Counter Petitioner in the above referenced matter. I have read the foregoing RESPONSE TO TEDRA PETITION, MOTION TO DISMISS TEDRA PETITION AND COUNTERCLAIM TO TEDRA PETITION and know the contents thereof.
>
> I have personal knowledge of the information contained therein as they pertain to myself and the matters discussed. If called upon to testify, I would competently testify as to the matters as stated above.
>
> I verify under penalty of perjury under the laws of the United States of America and the States therein that the factual statements in this RESPONSE TO TEDRA PETITION, MOTION TO DISMISS TEDRA PETITION AND COUNTERCLAIM TO TEDRA PETITION concerning myself, my activities, my knowledge and my intentions are true and correct to the best of my knowledge and belief.

While each Sibling claims to "have personal knowledge of the information [as it pertains] to myself and the matters discussed" in their response, the record before the court on summary judgment contained no declarations from the people who conducted the inspections, prepared the reports, and had personal knowledge of the information in the reports, such as Scott Colette of Harbor Property Management or Frank Overbeek of Bona Fide Home Inspections. The Siblings have not themselves demonstrated that they have the requisite firsthand knowledge or observations. "[L]ay witness opinion testimony must be based on firsthand knowledge or observation." SentinelC3, 181 Wn.2d at 142 (explaining that lay opinions based solely on consultations with experts whose reports are not authenticated cannot be considered on summary judgment). Because neither

9

the 2017 Inspections nor the Overbeek Report was based on the Siblings' personal knowledge, the Siblings' "verification" statements did not render them admissible.

Likewise, the photographs contained within those reports cannot be authenticated by the Siblings' verification statements. A party may authenticate a photograph by "evidence sufficient to support a finding that the matter in question is what its proponent claims"—for example, the testimony of a witness with knowledge. ER 901(a), (b)(1). The witness need not be the photographer or have been present when the picture was taken, but "the proponent must put forward a witness 'able to give some indication as to when, where, and under what circumstances the photograph was taken, and that the photograph accurately portrays the subject illustrated.' " State v. Sapp, 182 Wn. App. 910, 914-15, 332 P.3d 1058 (2014) (quoting State v. Newman, 4 Wn. App. 588, 593, 484 P.2d 473 (1971)). Thus, for example, in Sapp, the court held that the victim's grandmother could authenticate the photographs and video recordings depicting sexual abuse, based on her prior personal knowledge of the people and places depicted and the grandchild's age. Id. at 913, 916.

Here, however, the Siblings' verification statements do not establish that any of them took the photographs or were present when the photos were taken. Nor, unlike in Sapp, is there evidence establishing the Siblings had prior personal knowledge sufficient to establish when, where, and under what circumstances the photographs were taken, as is required to authenticate them under ER

901(b)(1).[6] Therefore, the Siblings' general verification statements are not sufficient to authenticate the photos included in the 2017 Inspections or Overbeek Report, so those photos were also not admissible.

As evidence of their counterclaim, the Siblings also point to a letter from their attorney, which alleges, inter alia, that "it is an obvious conclusion" that differences between the photos in the 2017 Inspections and the Overbeek Report show Diana "clearly failed 'to ensure that the properties are maintained in their historic condition.' " This letter was provided in response to Diana's discovery requests, and the Siblings' discovery responses were "sworn under penalty of perjury as true and correct." However, at most, this attestation establishes only that the attorney letter is what it purports to be—i.e., a letter from their attorney. Their attestation does not establish that the Siblings have personal knowledge of the facts discussed in the attorney letter. Thus, the information discussed in the attorney letter also is not admissible as substantive evidence of the counterclaim.

The Siblings also contend that because Diana had originally provided the 2017 Inspections in her responses to their discovery requests, those documents are therefore authenticated. They cite International Ultimate, which held that "authentication may be satisfied when the party challenging the document originally provided it through discovery," 122 Wn. App. at 748, but they overstate its import. The fact that a document was produced in discovery does not

---

[6] The 735 Property was a rental property not in the Siblings' possession, and there is no evidence in the record to establish the Siblings' prior personal knowledge of the 729 or 735 Properties. Kristy lives in Georgia, Johnny lives in Florida, and Nancy lives in Washington State. Only Alicia lived in California.

automatically render it self-authenticating. Rather, distinguishing the requirements of CR 56(e) and ER 901, the court in International Ultimate explained, "If the documents are properly authenticated and are not excluded because of hearsay, then an attorney may rely on them in a summary judgment motion regardless of any lack of personal knowledge." Id. at 746. In other words, a party may use documents produced in discovery in a summary judgment proceeding " 'if appropriately authenticated by affidavit or declaration.' " Id. at 747-48 (internal quotation marks omitted) (quoting Carson Harbor Vill., Ltd. v. Unocal Corp., 287 F. Supp. 2d 1118, 1134 n.64 (C.D. Cal. 2003)). Therefore, in International Ultimate and in Carson Harbor Village, documents were admissible for purposes of summary judgment because the party offering the documents had submitted a declaration that the documents were true and correct copies of the documents produced by the opposing party during discovery.

By contrast, here, the Siblings did not submit any declarations or affidavits, by their attorney or otherwise, to establish that the documents at issue were provided by Diana in response to discovery. Instead, the documents were simply attached as exhibits to the Siblings' response to Diana's summary judgment motion. Because they were not properly authenticated as Diana's discovery responses, they were not admissible for purposes of summary judgment, and the trial court properly declined to consider them on that basis.

We conclude that without declarations or affidavits establishing either the Siblings' personal knowledge of the contents of the 2017 Inspections and Overbeek Report or their photographs, or that Diana provided the 2017

12

Inspections in discovery responses, this evidence does not satisfy the CR 56(e) standard for admissibility in a summary judgment proceeding.

      B.  <u>Siblings' evidence submitted with Diana's motion</u>

In the alternative, the Siblings argue the evidence they submitted in support of their counterclaims[7] was admissible because Diana submitted the same evidence with her motion for summary judgment. Therefore, the Siblings argue, they "had no reason to present additional affidavits" or other evidence because Diana's choice "necessarily admits . . . the facts" and "waive[s] any defect[ ] in the admissibility" of their evidence. We disagree that a moving party renders evidence admissible under CR 56(e) by including documents in their summary judgment pleadings.

A party against whom a claim is asserted "may move with or without supporting affidavits for a summary judgment in such party's favor." CR 56(b). Then, the adverse party defending against the motion has the burden of setting forth specific facts showing that there is a genuine issue for trial with admissible evidence. CR 56(e); <u>Young v. Key Pharms., Inc.</u>, 112 Wn.2d 216, 225, 770 P.2d 182 (1989) (after moving party points to absence of genuine issue of fact, "then the inquiry shifts to the party with the burden of proof at trial"). " '[B]are assertions that a genuine material issue exists' do not constitute facts sufficient to defeat a

---

[7] Appellants refer to the evidence that they submitted as "the Siblings' evidence." We do the same to distinguish it from other evidence in the summary judgment record that only Diana submitted.

motion for summary judgment." SentinelC3, 181 Wn.2d at 140 (quoting Trimble, 140 Wn.2d at 92-93).

Here, Diana and the Siblings filed cross motions for summary judgment on the Siblings' counterclaim. In support of her motion, Diana's attorney signed, under penalty of perjury, a declaration attesting that attached as exhibits were true and correct copies of the Siblings' responses to Diana's discovery requests, as well as Diana's responses to the Siblings' discovery requests. The Siblings' discovery responses included their verified counterclaim, their interrogatory answers that incorporate their counterclaim, their attorney's letter to Diana, the 2017 Inspections, and the Overbeek Report.

The Siblings contend that even if *their* submissions of this information did not satisfy CR 56(e), the same evidence became admissible because Diana provided this information in support of *her* cross motion for summary judgment. They argue that when the moving party chooses to present the nonmoving party's evidence, that choice "comes with consequences: namely, that . . . the nonmoving party's evidence is admissible and should be considered." The Siblings cite two cases for this proposition, Bates v. Grace United Methodist Church, 12 Wn. App. 111, 529 P.2d 466 (1974), and Klossner v. San Juan County, 21 Wn. App. 689, 586 P.2d 899 (1978) (plurality opinion), aff'd, 93 Wn.2d 42, 605 P.2d 330 (1980). But neither case supports the proposition that merely attaching information to a motion for summary judgment satisfies the requirements of CR 56(e).

14

In <u>Bates</u>, the defendant supported his motion for summary judgment "exclusively" with the plaintiff's deposition. 12 Wn. App. at 112. By doing so, "the defendant was essentially declaring that he had no dispute with any of the material facts asserted in that deposition, and that even if all the material facts therein were assumed to be true, the defendant was entitled to judgment as a matter of law." <u>Id.</u> at 115. The plaintiff also relied exclusively on his own deposition in opposition to the motion. <u>Id.</u> at 112. The court reasoned that "the nonmoving party may not successfully oppose the motion by nakedly asserting that there are unresolved factual questions," but must set forth specific facts showing a genuine issue of material fact. <u>Id.</u> at 115. The record "did not disclose that the parties were 'disputing' any material issue of fact that would establish the defendant's negligence," so summary judgment was properly granted. <u>Id.</u> at 116. Thus, <u>Bates</u> does not stand for the general proposition that if a moving party includes any evidence with its motion, it concedes that it is admissible. Here, unlike the defendant in <u>Bates</u>, Diana submitted her own evidence. She did not rely exclusively on "the Siblings' evidence" but, rather, explicitly challenged its admissibility.[8]

In <u>Klossner</u>, the wife of a man who was killed driving on a San Juan County road sued the county for negligence. 21 Wn. App. at 690. In moving for summary judgment, the county relied solely on Klossner's answers to

---

[8] The Siblings contend Diana first challenged the Siblings' evidence as inadmissible in her reply brief below, too late for the Siblings to respond adequately. Regardless, the trial court did hear argument and considered the issue below. We review the trial court's grant of summary judgment de novo, <u>Ranger Ins. Co.</u>, 164 Wn.2d at 552, and the issue of admissibility has been fully briefed on appeal, so it is appropriate for our consideration.

interrogatories, which "describe[d] in detail the action of the truck during the accident and the effect of the road's defects on the path of the truck." Id. at 691-92. But the interrogatories were silent regarding whether her answers were based on her personal knowledge. Id. at 692. This court reversed the summary judgment dismissal, reasoning that by relying solely on Klossner's answers to support its motion, the county admitted her answers and all reasonable inferences therefrom, including an inference of negligence. Id. at 693-94. Two judges concurred only in the result because Klossner's answers "demonstrate[d] on their face that they were based on hearsay," and thus were inadmissible under CR 56(e) and could not provide the factual basis for determining liability as a matter of law. Id. at 696 (Andersen, A.C.J., concurring in result, with James, J., concurring in result separately at 697).

The Washington Supreme Court affirmed, but on different grounds. The county relied on Klossner's interrogatory answers to establish the nonexistence of an eyewitness to the accident, but also contended Klossner could not use the same documents to establish a material issue of fact because they were not based on her personal knowledge. 93 Wn.2d at 45. The court stated that the county "may not have it both ways. Indeed, it may not have it either way, for none of the documents satisfies CR 56(e)." Id. Because Klossner's interrogatory answers were not made on personal knowledge, nor did they establish she was competent to testify to the matters stated, they were inadmissible for summary judgment purposes. Id.

16

While the Siblings argue that by presenting their evidence, Diana "admitted" that evidence, Klossner does not support this conclusion. Unlike the moving party in Klossner, Diana has presented other admissible evidence establishing that there is no material issue of fact. Moreover, Klossner reinforces the rule that in the absence of personal knowledge, evidence does not satisfy CR 56(e) and may not be considered by a court on summary judgment. Here, by including the Siblings' discovery responses in the summary judgment record, Diana did not thereby concede admissibility under CR 56(e), nor did she render the responses admissible.

As the nonmoving party opposing Diana's motion for summary judgment, it was the Siblings' burden to set forth specific facts with admissible evidence showing a genuine issue for trial. CR 56(e); SentinelC3, 181 Wn.2d at 140. Because the Siblings did not set forth admissible evidence based on personal knowledge and because documents are not rendered admissible as evidence solely because the moving party filed them with a motion for summary judgment, the court did not err by excluding the Siblings' evidence from consideration in summary judgment proceedings.

II.     Breach of Fiduciary Duty

On appeal, the Siblings claim that Diana breached her fiduciary duty in several ways: (1) mismanaging the 729 and 735 Properties, resulting in defects that could expose the beneficiaries to potential liability upon taking ownership, (2) proceeding with a distribution plan and treating the transfer of the 729 Property differently than the transfer of the 735 Property, and (3) failing to keep

17

beneficiaries informed about the trust, failing to provide an accounting, and refusing to make reasonable arrangements for beneficiaries to review trust documents.[9] As the summary judgment record shows no genuine issue of material fact, the trial court did not err in dismissing the Siblings' counterclaim of breach of fiduciary duty.

A trustee owes the beneficiaries of the trust the highest degree of good faith, care, loyalty, and integrity. In re Marriage of Petrie, 105 Wn. App. 268, 275, 19 P.3d 443 (2001) (internal quotation marks omitted) (quoting Esmieu v. Schrag, 88 Wn.2d 490, 498, 563 P.2d 203 (1977)). Washington courts have defined a trustee's duty of care, skill, and diligence to be that degree of care, skill, and diligence that an ordinary prudent person exercises in similar affairs. Cook v. Brateng, 158 Wn. App. 777, 785, 262 P.3d 1228 (2010) (citing In re Nontestamentary Tr. of Parks, 39 Wn.2d 763, 767, 238 P.2d 1205 (1951)).

A. Mismanagement of properties

Regarding property, a trustee owes a general duty to use reasonable care and skill to make the trust property productive through leasing or managing it to generate income. Conserv. Nw. v. Franz, 199 Wn.2d 813, 829-30, 514 P.3d 174 (2022) (citing RESTATEMENT (SECOND) OF TRUSTS § 181 & cmt. a (AM. L. INST. 1959). "Waste" is an unreasonable or improper use, abuse, mismanagement, or

---

[9] Diana notes that the Siblings' counterclaim has varied over the course of litigation. In their counterclaim, the Siblings initially alleged Diana breached her fiduciary duty by "failing to maintain Trust and Estate assets in good and reasonable condition," attempting to transfer property that was "not reasonably maintained," failing to provide an accounting, and "attempting to disinherit" beneficiaries. In their motion for partial summary judgment, the Siblings alleged breach through "forced disclaimer of interest in inheritance" regarding the 735 Property.

omission of a duty touching real estate by one rightfully in possession that results in its substantial injury. Graffell v. Honeysuckle, 30 Wn.2d 390, 398, 191 P.2d 858 (1948). If a trust gives the trustee discretion with respect to the management of the trust property, exercise of that discretion is subject to the court's control only when it is necessary to prevent an abuse of that discretion. Conserv. Nw., 199 Wn.2d at 830 (citing RESTATEMENT (SECOND) OF TRUSTS § 187 & cmt. a).

In this case, while her mother, Amalia, was alive, the trusts obligated Diana to generate rental income, invading the principal if necessary, and expressly permitted her to hire agents without liability for their omissions or neglect. To establish that she had satisfied her duty to use reasonable care in managing the 729 and 735 Properties to generate rental income, Diana submitted her own sworn declaration that she "responded in a timely manner to maintenance and repair requests" at the 729 and 735 Properties. She hired a professional property management company, Harbor Property Management, to, among other purposes, "abide by all applicable California rental laws," address "needed repairs and maintenance issues," and "[c]oordinate the services above to minimize expenses and lost rent." She maintained voluminous records, 45 binders full, to "prove that I have done everything in my power to maintain the properties, not let them fall into disrepair, and to avoid waste."[10]

---

[10] In support of her summary judgment motion, Diana also submitted her interrogatory responses, which included a detailed narrative of the expenses paid for maintenance work and the income produced by those two properties. On appeal, the Siblings challenge Diana's answers to their interrogatories as not signed under penalty of perjury. Generally, issues not raised below may not be raised on appeal. See RAP 2.5(a); Roberson v. Perez, 156 Wn.2d 33, 39, 123 P.3d 844 (2005). Regardless, even without the information in Diana's interrogatory responses, the other evidence in the summary judgment record is sufficient to support the court's grant of

The summary judgment record also contains the sworn declaration of a local real estate agent, Gustavo Cardenas, who toured both properties in 2016 and 2021. Cardenas's declaration attached photos of the 729 Property at the time he toured it, but he took no photos of the 735 Property because that property was occupied by a long-term tenant. As to both properties, the real estate agent states that the properties showed "no deferred maintenance" but "will need a deep cleaning and new paint."

Finally, the record contains the sworn declaration of Harbor Property Management's managing broker, Scott Colette, which attached his letter stating that Diana "always asked for estimates" and expressing his view "that the overall condition of the property and the intended us [sic] an income producing investment has improved considerably" over the time his company had been maintaining the properties.[11]

By contrast, as discussed above, the record does not contain admissible evidence of mismanagement, much less that the Siblings would be exposed to liability under California rental law, other than the Siblings' " 'bare assertions.' " SentinelC3, 181 Wn.2d at 140 (quoting Trimble, 140 Wn.2d at 93). Therefore, we

---

Diana's motion for summary judgment dismissing the Siblings' counterclaim that Diana mismanaged the properties.

[11] The record also includes a report from Diana's expert, attorney Mark Vohr, concluding that Diana "clearly met her fiduciary duty" to generate income for her mother and that "nothing in the trust documents" supports the Siblings' contention that the two properties must be refurbished before being transferred to them. The Siblings challenged the expert on multiple grounds, including Diana's failure to disclose him as an expert and their lack of opportunity to depose him. Like the trial court, we determine it unnecessary to rely on the expert report to determine the summary judgment record establishes no genuine issue of material fact as to the claimed breach of fiduciary duty.

conclude no admissible evidence supports the Siblings' claim that Diana breached her fiduciary duty by exposing them to potential liability upon their taking ownership of the 735 Property.

### B. Distribution plan for transfer of 729 Property and 735 Property

The Siblings claim that Diana "had a duty to treat the Siblings equally," and that she breached this duty because she distributed the 729 Property to herself and Nancy but "treated Kristy and Alicia differently by filing the TEDRA petition to force them to accept the 735 Property." However, the Siblings provide no legal authority for their argument, and they point to no provision of the trust supporting a duty to treat siblings equally.

Rather, regarding the properties, the trust states, "The Trustee *shall distribute* the lots and residences described below as follows": the 735 Property "*shall be distributed* to KRISTY L. FERARA and ALICIA K. FERARA in equal shares if they are then living," and the 729 Property "*shall be distributed* to DIANA M. FERARA and NANCY S. FERARA in equal shares if they are then living . . . ." No trust provision required the trustee to retain the 735 Property indefinitely or to undertake any improvements to it. Accordingly, Diana did not breach her fiduciary duty by filing a TEDRA petition seeking to distribute the 729 Property when Kristy and Alicia refused to accept it. To the contrary, in so doing, Diana was fulfilling her obligation as trustee to distribute assets in accordance with the trust's directives. Thus, the evidence establishes no triable issue as to whether Diana's actions in distributing any of the trust properties breached her fiduciary duties, including the duty of impartiality under RCW 11.98.078.

21

C. Providing information to beneficiaries

The Siblings also argue that Diana breached her fiduciary duty because they "endure[d] delay and costs" trying to obtain information regarding the trust. Below, the Siblings conceded that Diana provided an accounting for the trust. On appeal, they argue that a genuine issue exists because "[e]ven though [they] eventually received the documents, they should not have had to endure the delay and costs that Diana imposed on them."

The trial court dismissed the Siblings' demand for an accounting as moot, and, as to Diana's alleged "failure to provide regular accounting," it held that there was no genuine issue of material fact. We likewise conclude no admissible evidence sets forth specific facts showing a genuine issue for trial regarding the Siblings' claim that Diana breached her fiduciary duties by imposing delay and costs on the Siblings in their pursuit of information regarding the trust's operation.

As discussed above, viewed in the light most favorable to the Siblings, no admissible evidence creates a question of fact as to whether Diana committed waste at either the 729 or the 735 Property, abused her discretion by hiring a property management company to manage them, or exposed the Siblings to potential liability as California landlords. Further, Diana did not breach her fiduciary duty by filing a TEDRA petition in order to distribute the 735 Property. Finally, the Siblings have not raised a genuine issue that Diana breached her fiduciary duty by allegedly imposing delay and costs on the Siblings in their pursuit of documents regarding the trust's operations. Therefore, the court

properly granted Diana's motion for summary judgment dismissing the Siblings' claim of breach of fiduciary duty.

### III.    Constructive Disclaimer

The Siblings also appeal the court's order requiring two of the Siblings, Kristy and Alicia, to accept transfer of title to the 735 Property within 30 days or be deemed to have disclaimed their interest in it. Below, the court noted that neither party cited authority for or against constructive disclaimer and acknowledged that it "has considerable equitable powers" under RCW 11.96A.020. On appeal, the Siblings concede that the trial court had the authority to order Kristy and Alicia to execute documents effectuating the transfer of property located in another state to them,[12] but nevertheless contend it erred.

The Siblings argue that the court abused its discretion because even if had the power to order the transfer of the 735 Property to Kristy and Alicia, "there is no statute or case law that grants a trial court the authority to constructively disclaim a beneficiary's interest in a specific bequest." Br. of Appellant at 55. The Siblings also argue that the court's constructive disclaimer order was contrary to Ivan and Amalia's intent that Kristy and Alicia personally inherit the 735 Property.[13]

---

[12] See OneWest Bank, FSB v. Erickson, 185 Wn.2d 43, 61, 367 P.3d 1063 (2016) (trial court has power to " 'indirectly act upon real estate in another State' " through its in personam jurisdiction over the parties (quoting Fall v. Eastin, 215 U.S. 1, 8, 30 S. Ct. 3, 54 L. Ed. 65 (1909)); In re Marriage of Kowalewski, 163 Wn.2d 542, 547, 182 P.3d 959 (2008) (trial court may "exercise its coercive powers" to order the parties to do that which the court cannot do directly, namely, transfer title to out-of-state real property).

[13] The Siblings also argue for the first time on appeal that if they prevail on their counterclaim for breach of fiduciary duty, then the court's order would be inequitable because it would force them to accept ownership and attendant liability for mismanaged property. Given that

23

TEDRA provides for the resolution of probate matters through nonjudicial dispute resolution methods, such as mediation, arbitration, and agreement. RCW 11.96A.010. Under TEDRA, superior courts have original subject matter jurisdiction over trusts "and all matters relating to trusts." RCW 11.96A.040(2). Regarding the settlement of trusts, the court "has full power and authority to proceed . . . in any manner and way that to the court seems right and proper, all to the end that the matters be expeditiously administered and settled by the court." RCW 11.96A.020(2).[14] Nonetheless, TEDRA's provisions "shall not supersede, but shall supplement, any otherwise applicable provisions and procedures." RCW 11.96A.080(2); In re Est. of Harder, 185 Wn. App. 378, 384, 341 P.3d 342 (2015). "TEDRA does not independently give trial courts authority when there is another statute" on point. In re Est. of Rathbone, 190 Wn.2d 332, 345, 412 P.3d 1283 (2018).

The Siblings argue that a different statute, RCW 11.86.031, controls the disclaimer of an interest, so a court cannot order "constructive disclaimer"

---

the Siblings fail to establish a question of fact as to their claim of breach of fiduciary duty, we reject this argument.

[14] The statute states in relevant part:

(1) It is the intent of the legislature that the courts shall have full and ample power and authority under this title to administer and settle:

....
(b) All trusts and trust matters.
(2) If this title should in any case or under any circumstance be inapplicable, insufficient, or doubtful with reference to the administration and settlement of the matters listed in subsection (1) of this section, the court nevertheless has full power and authority to proceed with such administration and settlement in any manner and way that to the court seems right and proper, all to the end that the matters be expeditiously administered and settled by the court.

RCW 11.96A.020.

because it would be contrary to that statute. They claim that because RCW 11.86.031 sets "strict requirements and limitations for disclaimers," there is "no room" for the possibility of constructive disclaimer.

Chapter 11.86 RCW authorizes beneficiaries to disclaim an interest and sets out specific parameters for how they may do so. RCW 11.86.021, .031. But the statute sets limits only on how a beneficiary would affirmatively disclaim an interest; it does not divest the court of its equitable powers under TEDRA.[15] Rather, chapter 11.86 RCW anticipates judicial process. For example, RCW 11.86.051(1)(c) anticipates that an interest may not be disclaimed if sold "or otherwise disposed of pursuant to judicial process." Thus, the court's order of constructive disclaimer under TEDRA—i.e., pursuant to judicial process— supplemented chapter 11.86 RCW, rather than conflicted with it.

As for the Siblings' argument that ordering constructive disclaimer was contrary to Ivan and Amalia's intent, while they are correct that a court's "paramount duty in construing wills is to give effect to the testator's intent," In re Est. of Riemcke, 80 Wn.2d 722, 728, 497 P.2d 1319 (1972), the court-ordered

---

[15] Diana cites Norris v. Norris as precedent for disclaimer by operation of law, 25 Wn. App. 290, 297, 605 P.2d 1296 (1980). In Norris, a surviving husband, acting as executor of his first wife's prior will, elected to probate the will and accepted its benefits; therefore, he "disclaimed, by operation of law," his rights under a community property agreement executed after the will. However, Norris does not shed light on the issue here regarding the interplay of TEDRA and the disclaimer statute, ch. 11.86 RCW, as the disclaimer statute was not in effect at the time of the wife's death, Norris, 25 Wn. App. at 297, and the case also predates the enactment of TEDRA by two decades. Further, as the Siblings note, on subsequent review by the Washington Supreme Court, while the Court of Appeals decision cited by Diana was affirmed, the reasoning was different. The Supreme Court held that the husband's probate of the will was an election of the provisions of the will over the community property agreement, and while that agreement "could and should have been determined in the probate of [the wife's] estate, res judicata prevents the court from now reexamining the distribution in light of the community property agreement." Norris v. Norris, 95 Wn.2d 124, 130-31, 622 P.2d 816 (1980).

disclaimer here is not contrary to the testator's intent. The Siblings rely on Rathbone, 190 Wn.2d at 347, in which the court vacated a trial court's order construing a nonintervention will with a no contest clause. "Generally, a superior court's authority when dealing with nonintervention wills is statutorily limited." Id. at 339 (citing In re Est. of Jones, 152 Wn.2d 1, 9, 93 P.3d 147 (2004)). The Rathbone court determined that TEDRA did not independently give the trial court authority to construe a nonintervention will because to do so was contrary to the testator's clear intent that her personal representative, not the courts, should construe her will. Id. at 346-47.

But Rathbone is inapposite; here, there is no nonintervention will at issue. Instead, RCW 11.86.041 prescribes that a disclaimer has the same legal effect as a beneficiary predeceasing the surviving trustor. See generally In re Est. of Baird, 131 Wn.2d 514, 519, 933 P.2d 1031 (1997) (a proper disclaimer passes the disclaimed interest as if the disclaiming beneficiary predeceased the date of the transfer of the interest (quoting RCW 11.86.041(1))). Here, the trustors' intent is clear that if either Kristy or Alicia predeceases the other, then the 735 Property is to descend first to the living descendants of the deceased person, then to the other beneficiary, then to the other beneficiary's living descendant, and then to the trustors' living descendants.[16] Thus, in the event of a disclaimer, the 735

---

[16] The trust specifies that the 735 Property

shall be distributed to KRISTY L. FERARA and ALICIA K. FERARA in equal shares if they are then living, and if either KRISTY or ALICIA is then deceased, such deceased beneficiary's share shall be distributed to her then living descendants by right of representation, and if she has no descendants then living, her share shall be distributed to the other beneficiary named in this section

26

Property does not go to the initially named beneficiary. That the disclaimer occurs by operation of law does not render the transfer contrary to the trustors' intent.

TEDRA gives courts broad authority to "proceed with such administration and settlement in any manner and way that to the court seems right and proper, all to the end that the matters be expeditiously administered and settled by the court." RCW 11.96A.020(2). When a beneficiary does not accept a distribution, a court's order of constructive disclaimer as an alternative to that inaction is a reasonable exercise of the court's authority to proceed with the expeditious administration and settlement of a trust's assets.

Therefore, we conclude the court's order of constructive disclaimer was within its equitable power and supplemented, without superseding, chapter 11.86 RCW, which authorizes disclaimer by a beneficiary. Moreover, the court's order was not contrary to the trustors' intent because, as with other disclaimers, the effect was that the property would pass in accordance with the trust's provisions in the event of a predeceasing beneficiary.

IV. Fees and Costs

Below, the trial court ordered the Siblings to pay costs and fees of $73,341.45 to Diana under RCW 11.96A.150 after hearing motions from both sides and entering findings of fact and conclusions of law.

---

6.1(b) if she is then living, and if she is not then living, to the other beneficiary's then living descendants by right of representation, and if the other beneficiary has no descendants then living, to Trustors' then living descendants by right of representation.

27

Under TEDRA's attorney fees award provisions, the trial court has discretion to award fees and other costs to any party in an estate dispute proceeding governed by Title 11 RCW. RCW 11.96A.150. RCW 11.96A.150(1) applies not only to trial courts but also to "any court on an appeal."

The court may award any amount it "determines to be equitable." RCW 11.96A.150(1). "In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved." RCW 11.96A.150(1). We review a trial court's decision to award attorney fees under TEDRA for " 'facts and circumstances clearly showing an abuse of the trial court's discretion.' " In re Est. of Black, 153 Wn.2d 152, 173, 102 P.3d 796 (2004) (quoting In re Est. of Larson, 103 Wn.2d 517, 521, 694 P.2d 1051 (1985)).

The trial court found that Diana was required to file a TEDRA petition and that her actions benefited the trust. It found that the Siblings' actions did not benefit the trust and were harmful. It ordered the four litigating Ferara Siblings, Alicia, Kristy, Nancy, and Johnny, to pay costs and fees to Diana jointly and severally, i.e., not from the trust, because their actions were harmful to it. See In re Est. of Niehenke, 117 Wn.2d 631, 647-48, 818 P.2d 1324 (1991) (stating there are situations where attorney fees are properly assessed against the estate, but noting that generally the estate must be benefited if attorney fees are assessed against it).

28

Diana contends that the trial court properly exercised its discretion to award her fees below, and she requests fees on appeal under RCW 11.96A.150(1) and RAP 18.1. We agree that the trial court did not abuse its discretion in awarding her fees and costs. On appeal, Diana is the prevailing party. The issues raised by the Siblings on appeal did not benefit the trust, and further harm was done by extending the delay in carrying out the intent of its trustors, Ivan and Amalia. Therefore, we agree to award costs and fees on appeal to Diana to be paid by the four litigating Ferara Siblings, not the trust.[17]

Affirmed.

_Chung, J._

WE CONCUR:

_Mann, J._                    _Dwyer, J._

---

[17] Because we affirm the trial court's decision on summary judgment, we deny the Siblings' request that we reverse the grant of fees below and grant them fees on appeal.